Filed 6/7/13  Freden v. Ozel Fine Jewelry CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| TANYA FREDEN, | |
| Plaintiff and Respondent, | E054136 |
| v. | (Super.Ct.No. CIVSS805579) |
| OZEL FINE JEWELRY, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Donna G. Garza, Judge.  Affirmed in part; reversed in part.

Gutierrez, Preciado & House and Calvin R. House for Defendant and Appellant.

Law Offices of Timothy B. McCaffrey, Jr., Timothy B. McCaffrey, Jr., and Natasha R. Chesler for Plaintiff and Respondent.

1

Tanya Freden (Freden) sued her former employer, Ozel Fine Jewelry (Ozel). A jury found Ozel failed to pay Freden (1) overtime wages (Labor Code, § 510),[1] and (2) all the wages due to her when her employment was terminated. (§ 201.) For the failure to pay overtime wages, the jury awarded Freden $21,000. The trial court entered judgment in favor of Freden in the amount of $51,353.84, which was comprised of the $21,000 for the overtime award and $30,353.84 for wait time penalties (§ 203).

Ozel contends the trial court erred by entering judgment in the amount of $51,353.84 because (1) the jury awarded Freden compensatory damages for the failure to pay overtime, when statutorily, Freden can only be awarded the overtime wages without any further damages; and (2) the trial court miscalculated the wait time penalty. We reverse the damages portion of the judgment.

### FACTUAL AND PROCEDURAL HISTORY

Freden sued Ozel for (1) sexual harassment; (2) wrongful discharge; (3) failure to pay overtime wages; and (4) failure to pay all wages due at the time of terminating employment. The jury found in favor of Freden on the claims of (1) failing to pay overtime wages, and (2) failing to pay all wages due at the time of terminating employment. The jury found Freden was not sexually harassed or wrongfully terminated. During trial, Freden testified that she was unsure how much money Ozel owed her for her wages, and said that she left the calculations to her attorneys. During closing arguments, Freden's trial attorney argued that Freden was due $291 in overtime

---

[1] All subsequent statutory references will be to the Labor Code unless otherwise indicated.

compensation. Freden's trial counsel further argued Freden was owed $21,000 in "total unpaid compensation," which included her economic damages for being unemployed "for roughly six to seven months."

During deliberations, the jury asked the trial court, "Can we award damages on [the failure to pay overtime]?" The trial court contacted the parties, neither party raised an objection, and then the trial court responded, "Yes," to the jury's question. The jury awarded Freden $21,000 for her overtime claim. The trial court awarded Freden a total sum of $51,353.84, which was comprised of $21,000 for overtime wages and $30,353.84 for wait time penalties.

Ozel filed a motion for a judgment notwithstanding the verdict, or in the alternative, a motion for new trial. In the motion, Ozel argued the damages were excessive and not supported by the evidence. Ozel figured that for Freden to be owed $21,000 in overtime compensation she would have needed to work 95 hours per week— 40 regular hours and 55 overtime hours. Freden was paid $10 per hour plus commissions.

The trial court denied Ozel's motions. The trial court reasoned the overtime issue was "so intertwined" with the sexual harassment and wrongful termination claims that they "all blended together," and therefore, the jury's award of $21,000 for failure to pay overtime was supported by the evidence. The trial court said, "The Court will indicate in this matter, since the information was so intertwined between every cause of action, and because there appears to be damages that she suffered, not only while there,

3

but after there is a rational basis for the jury arriving at the $21,000 award in this matter."

## DISCUSSION

### A. OVERTIME DAMAGES

#### 1. *CONTENTION*

Ozel contends the trial court erred by entering judgment in favor of Freden in the amount of $21,000 for the overtime cause of action, because Freden's damages must be limited to the unpaid wages. We agree.

#### 2. *INVITED ERROR*

As a preliminary matter, we address Freden's argument that Ozel should be estopped from raising this issue on appeal because Ozel invited the error by not objecting when the jury asked if it could award damages for the overtime cause of action. We conclude Ozel did not invite the error.

"The invited error doctrine is based on estoppel. '"Where a party by his conduct induces the commission of error, he is estopped from asserting it as a ground for reversal" on appeal.' [Citation.]" (*Huffman v. Interstate Brands Companies* (2004) 121 Cal.App.4th 679, 706, italics omitted.) "[T]he invited error doctrine requires affirmative conduct demonstrating a deliberate tactical choice on the part of the challenging party. [Citations.]" (*Id.* at p. 706; see also *Pioneer Const. Inc., v. Global Inv. Corp.* (2011) 202 Cal.App.4th 161, 169.) The record must reflect the appellant's tactical reason for inviting the alleged error, in order for the doctrine to apply. (*People v. Tate* (2010) 49 Cal.4th 635, 695, fn. 32.) The purpose of the doctrine is to "prevent[]

4

a party from misleading the trial court and then profiting therefrom in the appellate court. [Citations.]" (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403.)

The jury asked the trial court if it could "award damages" on the overtime wage cause of action. The record reflects that at 2:37 p.m. the question was received and the trial court "called" counsel. At 2:48 p.m., the trial court responded "Yes" to the jury's question, and the jury resumed deliberations.

It is unclear what discussion, if any, took place between the trial court and trial counsel during the 11 minutes between the question being submitted and the response being given to the jury. It is unclear if the trial court even spoke to Ozel's counsel before responding to the jury, since there is nothing indicating the telephone call resulted in a conversation. Since the record does not reveal what, if any, comments Ozel might have made about the response, we cannot determine whether Ozel made a deliberate and tactical choice to mislead the trial court.

Moreover, we note that it is not clear Ozel should have raised an objection or that the "Yes" response was misleading. There is a gray area here, due to the term "damages" being vague in this context. Ozel could have believed the jury's question about "damages" referred to the remedy offered by the statute, not an amount in excess of the statutory damages. (See e.g. *Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715, 755 ["proof of aggregate damages for time-and-a-half overtime"]; *Brewer v. Premier Golf Properties* (2008) 168 Cal.App.4th 1243, 1247 [the jury "awarded damages totaling less than $1,000 for unpaid regular and overtime wages"]; *Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1189 ["plaintiffs to prove

5

their damages for unpaid overtime"].) Since Ozel could have reasonably believed there was no need to object, due to the vague use of the word "damages" in the jury's question, there is further reason for this court not to apply the doctrine of invited error—beyond the fact that record provides little insight into the possible conversations surrounding the response to the jury's question. Thus, we conclude the doctrine of invited error is not applicable to this issue.

### 3. *OVERTIME LAW*

We begin by examining the law, in order to determine what damages may be collected in a suit for unpaid overtime wages. Since we are addressing a legal question, we apply the de novo standard of review. (*Blaich v. W. Hollywood Rent Stabilization Dept.* (2011) 195 Cal.App.4th 1171, 1175.)

The "new right-exclusive remedy" doctrine "provides that '[w]here a statute creates new rights and obligations not previously existing in the common law, the express statutory remedy is deemed to be the exclusive remedy available for statutory violations, unless it is inadequate.' [Citations.]" (*Brewer v. Premier Golf Properties*, *supra*, (2008) 168 Cal.App.4th at p. 1252, italics omitted.) "[A]n employer's obligation to pay overtime compensation to his employee would not exist but for the Labor Code." (*Aubry v. Goldhor* (1988) 201 Cal.App.3d 399, 404.) Therefore, the new right-exclusive remedy doctrine applies to overtime wage violations.

6

The Labor Code sets forth an express statutory remedy for overtime compensation violations. Section 1194, subdivision (a), provides: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than . . . the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this . . . overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." Thus, the law reflects overtime compensation suits are subject to an exclusive remedy provision, which provides a plaintiff may collect: (1) the wages due, (2) interest due on the wages, (3) attorney's fees, and (4) costs.

Freden asserts the exclusive remedy should not apply in this case because section 1194 "does not use any language precluding the recovery for any other harms proximately caused" by the failure to pay overtime. Freden's argument is not persuasive because the statute does not need to contain words limiting the right to recover, because it affirmatively reflects what can be recovered. The Legislature cannot be expected to limit every possibility that can occur in a lawsuit. Rather, the Legislature has limited plaintiffs by affirmatively providing the type of damages that can be collected in overtime compensation lawsuits. (See *MacIsaac v. Waste Management Collection and Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1083 [we interpret words in a statute by their plain and commonsense meanings, looking for the literal meaning of the statute].)

Moreover, a court presumes the Legislature was aware of judicial decisions when amending a statute. (*Pieri v. City and County of San Francisco* (2006) 137 Cal.App.4th

886, 891-892.) Section 1194 was last amended in 1992. (Stats. 1992, ch. 427, § 120.) The new right-exclusive remedy doctrine was discussed by our Supreme Court in 1990. (See *Rojo v. Kliger* (1990) 52 Cal.3d 65, 82.) Accordingly, if the Legislature did not want the "'new right-exclusive remedy'" doctrine to apply to section 1194, it could have included that in the law; or, if the Legislature wanted greater damages to be available, then it could have expanded the language of section 1194. However, as it stands, the plain interpretation of section 1194 is that a plaintiff suing for overtime wages may only collect (1) the wages due, (2) interest due on the wages, (3) attorney's fees, and (4) costs.

Next, Freden asserts the exclusive remedy should not apply in this case because it is inadequate. Specifically, Freden contends she suffered further economic harms that were proximately caused by Ozel's failure to pay overtime, and therefore, the exclusive remedy would not be sufficient in this case. Freden does not specify what other damages she suffered as a result of Ozel's failure to pay overtime wages. Accordingly, we are unable to assess whether the exclusive remedy is adequate.

### 4. *DAMAGES AWARDED*

Ozel questions the legality of damages awarded on the basis that the damages conflict with the Labor Code. Thus, we are addressing a question of law and apply the de novo standard of review. (*Blaich v. West Hollywood Rent Stabilization Dept.*, *supra*, 195 Cal.App.4th at p. 1175.) As set forth *ante*, section 1194 provides that a plaintiff suing for overtime wages may only collect (1) the wages due, (2) interest due on the wages, (3) attorney's fees, and (4) costs.

8

Freden testified that she was unsure how much money Ozel owed her. Freden explained that, in regard to calculations, "I left that to my lawyers." During closing arguments, Freden's trial counsel asserted Ozel owed Freden $291 in overtime wages. Freden's trial counsel argued Ozel owed Freden $21,000 in "total unpaid compensation," which included Freden's economic damages for being unemployed "for roughly six to seven months." The jury awarded Freden $21,000 for Ozel's failure to pay her overtime wages.

The jury's damages verdict is improper, because the jury should have only awarded Freden the overtime wages due to her. The jury did not have the authority to award Freden money for the months she was unemployed. (§ 1194, subd. (a).) Thus, the damages award is erroneous and must be reversed.

The trial court, prior to rejecting Ozel's motion for a judgment notwithstanding the verdict, explained why it believed the $21,000 award was proper. The trial court stated that the overtime issue was "so intertwined" with the sexual harassment issue that the two "blended tremendously." The trial court conceded Freden's sexual harassment claim was not viable, but still concluded the overtime claim "intermingled" with the sexual harassment and wrongful termination allegations. Thus, the trial court reasoned there was a rational basis for the jury arriving at the $21,000 award for the overtime cause of action. The trial court also denied Ozel's motion for a new trial, because "there was some rational basis for what [the jury] decided based on the evidence."

9

"'A motion for judgment notwithstanding the verdict may be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support. [Citation.] [¶] . . . As in the trial court, the standard of review [on appeal] is whether any substantial evidence— contradicted or uncontradicted—supports the jury's conclusion.' [Citation.]" (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 770.) There is nothing in the record supporting overtime wages in the amount of $21,000. The trial court's conclusion that the evidence supported the $21,000 award is flawed because it relies on conflating sexual harassment and wrongful termination damages with overtime wages. It appears the trial court deduced how the jury might have combined causes of action to arrive at the $21,000 award, but that does not mean the award is correct in light of the overtime law. (§ 1194, subd. (a).)

In an overtime cause of action only the wages, interest, fees, and costs may be awarded. Therefore, the trial court needed to look at the evidence to determine whether it supported a finding of $21,000 being due for overtime compensation. Instead, the trial court determined that the $21,000 award could be cobbled together from combining the successful overtime cause of action with the unsuccessful sexual harassment and wrongful termination causes of action. When determining whether substantial evidence supports a damages award, a trial court should not combine elements from different causes of action, i.e. lost earnings from sexual harassment and wrongful termination with overtime wages, to justify the jury's award. Rather, the court should look at the evidence to determine whether it supports the finding on the element at issue. In this

10

case, there was not evidence of $21,000 in overtime damages. Accordingly, Ozel's motion for judgment notwithstanding the verdict should have been granted.

A motion for new trial may be granted when excessive damages are awarded. (Code Civ. Proc., § 657.) "[An] appellate court ordinarily defers to the trial court's denial of a motion for new trial based on excessive damages, because of the trial judge's greater familiarity with the case. [Citations.]" (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 614.) As explained *ante*, excessive damages were awarded in this case because the Labor Code only authorizes a plaintiff to collect (1) the wages due, (2) interest due on the wages, (3) attorney's fees, and (4) costs. The $21,000 finding by the jury was far in excess of the $291 in damages associated with the overtime claim. Accordingly, the new trial motion should have been granted.

Freden argues, "[S]ubstantial evidence supports the logical inference that but for the issue concerning overtime wages, Ozel would not have fired Ms. Freden, and she would have remained employed there. Thus, her economic damages were caused by the failure to pay overtime." Freden's argument is not persuasive because the Labor Code does not permit a plaintiff to collect all damages that might flow from a failure to pay overtime compensation. Rather, a plaintiff is entitled only to wages, interest, costs, and fees. Thus, Freden's argument that the overtime issue led to a wrongful termination, does not persuade us that she is entitled to lost earnings for a wrongful termination.

Next, Freden asserts the $21,000 award is proper for the failure to pay overtime wages because economic damages can be awarded for contractual causes of action. Freden again argues that she was fired because Ozel did not want to pay her overtime

11

wages, and therefore, her lost earnings are consequential damages related to being fired for the overtime issue. Whether framed as a tort or a contract cause of action the Labor Code remains the same. A plaintiff suing for failure to pay overtime wages may only collect (1) the wages due, (2) interest due on the wages, (3) attorney's fees, and (4) costs. Presenting the excess damages as "consequential" contract damages does not change the analysis that the statute does not authorize such damages for an overtime compensation cause of action.

5.    *NEW TRIAL*

During the trial it was unclear exactly how much money Freden was owed for overtime wages. For example, Abraham Tekin, the owner of Ozel, testified that he did not pay Freden for her overtime wages, but also stated he did compensate for her overtime work with a pendant. Tekin's son, who worked as an Ozel employee, testified that he gave Freden a check in the amount of $1,600 for her overtime wages. The check was written in different color inks and had White Out on it. Freden testified she had been given the $1,600 check, but was asked to cash it for Tekin's son, so she cashed the check but gave the money to Tekin's son. Freden explained she sometimes cashed checks for Tekin's son when they were the only two people working in the jewelry store.

Given the foregoing evidence, it is unclear exactly how much money Freden is owed for her overtime wages, because there was not an easily calculable amount that was discussed at the trial court. Accordingly, this court cannot reduce the damage

12

award because it is unclear what amount of money is due to Freden. Thus, a new trial must be had on the issue.

We now examine the scope of the new trial. "It is well settled that '[t]here is no constitutional impediment to a retrial of a limited issue, so long as that issue is sufficiently distinct and severable from the others that a limited retrial would not result in an injustice.' [Citations.]" (*Barmas, Inc. v. Superior Court* (2001) 92 Cal.App.4th 372, 375.) It appears the damage issue is severable from the other issues at trial. While the trial court found it to be intertwined with other causes of action, we disagree with the trial court's assessment. The overtime wage issue requires evidence of the hours Freden worked and the amount of money she was paid—it is not a matter that is intertwined with other causes of actions. Thus, we will order that a new trial be conducted on the issue of damages alone, unless prior to the trial Freden agrees to a reduction in the damage award that the trial court determines to be fair and reasonable. (Code Civ. Proc., § 662.5, subd. (a)(2).)

B.    WAIT TIME PENALTY

Ozel contends the trial court erred by miscalculating the wait time penalty. Ozel asserts the wait time penalty should have been $6,916.80—not $30,353.84. Freden concedes the trial court miscalculated the wait time penalty and agrees to reducing the amount to $6,916.80. Although the parties agree to a particular sum, we will reverse the damages award in its entirety. We do not rely on the parties' calculation in this matter because it is unclear from the record exactly how much money is due to Freden.

13

Section 203, subdivision (a), provides that if an employer fails to pay an employee's wages then the "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

Ozel terminated Freden's employment on January 24, 2008. Freden filed her original complaint on April 25, 2008. Thus, the 30-day limit would apply to the wait time penalty. Freden earned $10 per hour plus commissions. The parties agree Freden's longest shifts lasted 11 hours and use the 11 hour shifts as a basis for arriving at the sum of $6,916.80, e.g., $20.96 (highest rate of pay) x 11 hours (longest shift) x 30 days. We find this problematic because one of Freden's time cards reflects she worked for 11.5 hours on two occasions. Tekin did not document Freden's lunch breaks, so it is unclear if a lunch break took place during the 11.5 hour shifts.

One of the 11.5 hour shifts allegedly occurred on Christmas Eve. Tekin testified that Freden could not have worked for 11.5 hours on Christmas Eve, as she claimed on her timecard, because she claimed to have worked until 10:00 p.m., but the store closed at 6:00 p.m. Thus, it is unclear from the record exactly how many hours comprised Freden's longest shift. It is possible 11.5 hours was her longest shift, but it is also possible the parties correctly agreed on 11 hours. Since we cannot be certain of how many hours to use when calculating the wait time penalty, we will reverse this portion of the award as well.

14

# DISPOSITION[2]

The damages portion of the judgment is reversed.  The trial court is directed to hold a new trial on the issue of damages, unless prior to trial Freden consents to a reduction of damages that the trial court determines to be fair and reasonable.  (Code Civ. Proc., § 662.5, subd. (a)(2).)  In all other respects, the judgment is affirmed. Appellant is awarded its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

HOLLENHORST
Acting P. J.

CODRINGTON
J.

---

[2] Abraham Tekin, also a defendant in the underlying case, did not file a brief at this court; and as he was not aggrieved by the judgment this appeal is final as to him as well.

15