[No. D050686. Fourth Dist., Div. One. Dec. 3, 2008.]

CHRISTINE BREWER, Plaintiff and Appellant, v.
PREMIER GOLF PROPERTIES, LP, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts IIC., III and IV.

1244

COUNSEL

Law Office of David B. Sharp and David B. Sharp for Plaintiff and Appellant.

Law Office of Patrick F. O'Connor and Patrick F. O'Connor for Defendant and Appellant.

OPINION

McDONALD, J.—Christine Brewer, a longtime waitress employed at the Cottonwood Golf Club restaurant, quit her job in March 2005. Shortly thereafter, Brewer filed this action against her employer, Premier Golf Properties, LP, doing business as Cottonwood Golf Club (Cottonwood) alleging a cause of action for age discrimination (Gov. Code, § 12940), and seeking compensatory and punitive damages and attorney fees. Her original complaint also alleged causes of action for "meal break" and "rest break" violations (Lab. Code, § 226.7),[1] and her first amended complaint added a fourth cause of action alleging other violations of the Labor Code.

After the first phase of the bifurcated trial, the jury's special verdict on the age discrimination claim found in favor of Cottonwood. Brewer's cross-

---

[1] All statutory references are to the Labor Code unless otherwise specified.

appeal asserts the trial court erroneously excluded certain exhibits at trial and those errors were prejudicial and require a new trial on her age discrimination claim.

The other claims decided during the first phase of the bifurcated trial involved alleged Labor Code violations. The jury returned special verdicts in favor of Brewer on most of her pleaded Labor Code violations, and awarded damages totaling less than $1,000 for unpaid regular and overtime wages. The judgment also included approximately $6,000 for unpaid meal and rest break wages (§ 226.7), $4,000 as "pay stub penalties" (§ 226), and $15,300 for "minimum wage" penalties (§ 1197.1). Cottonwood's appeal asserts the expiration of the statute of limitations barred the award of some of these penalties and Brewer's failure to exhaust her administrative remedies entirely bars her recovery of penalties.

The most significant monetary award was the punitive damages award. The jury, in a special verdict that accompanied the special verdicts exonerating Cottonwood of age discrimination but finding Labor Code violations, issued a separate special verdict finding Cottonwood had acted with fraud, oppression or malice toward Brewer. A subsequent special verdict question was submitted to the jury to clarify the claim to which the malice finding applied. The jury answered that its malice conclusion was based on the Labor Code violations and not on the conduct underlying Brewer's age discrimination claim. The court then proceeded with the second phase of the trial to determine the amount of punitive damages, and the jury awarded $195,000 as punitive damages. Cottonwood's appeal raises numerous challenges to the judgment, including that punitive damages are not available for the pleaded violations of the Labor Code.[2]

The trial court, by a posttrial order, also awarded a portion of the attorney fees and costs sought by Brewer. On appeal, both parties challenge this order.

---

[2] Cottonwood also asserts on appeal that (1) punitive damages may not be recovered because Brewer's complaint did not plead a claim for punitive damages in connection with her claims arising out of the violations of the Labor Code, (2) the jury's award was tainted by numerous procedural errors, (3) the factual finding underlying the punitive damages award was not supported by substantial evidence, and (4) the amount awarded was excessive in violation of due process. Because of our conclusions, we do not reach these issues. Additionally, after entry of judgment, the parties filed cross-motions for judgment notwithstanding the verdict (JNOV) and/or for a new trial, and the court entered a conditional new trial order, granting Cottonwood a new trial unless Brewer elected to accept a reduced punitive damages award of $75,000. Brewer's cross-appeal, insofar as she asserts the conditional new trial order is invalid for various reasons, is moot because of our conclusion that punitive damages are not recoverable for the pleaded Labor Code violations.

## I

## COMMON FACTUAL BACKGROUND[3]

Brewer, a longtime waitress at the Cottonwood Golf Course restaurant, worked the afternoon shift and was generally the only server. Her remuneration was composed of an hourly wage paid by Cottonwood and tips received from customers.

In July 2002 Cottonwood bought the golf course and related amenities. The golf course facilities were old and its patronage was declining, and Cottonwood sought to correct various management and accounting problems and to restore profitability to the business.

In December 2004 Cottonwood hired Mr. Longhauser as its food and beverage manager. He sought to change the ambience of the restaurant from a coffee shop atmosphere to a steak house atmosphere, and also opened a snackbar located on the golf course. After Cottonwood decided to change the restaurant's ambience, Brewer was offered a position at the newly created snackbar, which she accepted. However, around January 20, 2005, approximately eight days after starting at the snackbar, Brewer injured her back while performing her duties. Shortly after Brewer injured her back, Cottonwood abandoned the snackbar concept.

Brewer returned to work on February 1, 2005, and wanted to resume her former afternoon shift at the restaurant. Longhauser knew she did not want to work the morning shifts, which were less lucrative because of the nature of the clientele. However, newly hired waitresses were then working the afternoon shifts, and Longhauser therefore assigned Brewer to work the less lucrative morning shift. This shift required that she be at work at 6:30 a.m., and she was later assigned to report at 5:30 a.m. On March 8, 2005, Brewer renewed her request to be assigned to the afternoon shift, but Cottonwood denied the request because, "[b]ased on the current customer profiles, staff sales and levels of productivity," Cottonwood believed the overall profitability of the food and beverage business would be enhanced by retaining her assignment to the morning shift. A few weeks after her request for the

---

[3] Brewer's briefs contain extensive citations to those passages of testimony supporting her claim that she was treated adversely based on her age. However, because the jury rejected her age discrimination claim, and we are required to consider the evidence most favorably to the jury's verdict, we largely omit description of the evidence relied on by Brewer to support her age discrimination claim.

afternoon shift was denied, Brewer resigned. Two months later, after obtaining a "right-to-sue" letter from the Department of Fair Employment and Housing, Brewer filed this lawsuit.

## II

### COTTONWOOD'S APPEAL: THE UNDERLYING JUDGMENT

Cottonwood raises a series of challenges to the punitive damages award and to the damages and penalties awarded under various provisions of the Labor Code.

### A. *The Underlying Proceedings*

*The Pleadings and Evidence*

The factual basis for the damages and penalties awarded under the Labor Code statutes were based on Brewer's claims that Cottonwood violated the Labor Code in two distinct areas. First, Brewer's complaint alleged she was denied the meal breaks and rest breaks mandated by section 226.7 There is substantial evidence to support the jury's finding in her favor on those claims. Brewer testified she was never provided those breaks, was never told she could take those breaks, and was specifically told she could not take those breaks. There were some days when she worked nine or 10 hours without a break.

Brewer's first amended complaint also alleged Cottonwood did not pay her the wages she earned for the hours she actually worked, and therefore (1) did not pay her wages at the required minimum wage rate, and (2) did not give her accurate itemized wage statements. There is substantial evidence to support the jury's finding in her favor on those claims. At trial, Mr. Conrad (Cottonwood's controller) conceded Cottonwood was required to pay employees for every minute of work. However, Brewer presented documentary evidence (in the form of her timesheets and spreadsheets summarizing those timesheets) demonstrating that over the course of numerous pay periods Cottonwood had underpaid Brewer, both for the regular hours she worked and for the overtime she worked.[4] Mr. Conrad conceded that, because Brewer

---

[4] Those same spreadsheets also identified the corresponding days on which she was entitled to meal and rest breaks that, according to her testimony, she was not provided.

was paid the minimum wage, if Cottonwood paid her for only a portion of the hours she actually worked on any given day, Cottonwood did not pay her the minimum wage for that day.

### The Special Verdicts and Judgment

The jury found Cottonwood paid Brewer less than the minimum wage, Brewer was owed $801.32 in unpaid wages, and she had not been paid the minimum wage for a total of 62 pay periods. The jury also found Cottonwood had paid Brewer less than the legal overtime compensation, and Brewer was owed $154.78 in unpaid overtime wages. The jury found Cottonwood had not provided Brewer with meal periods on 392 occasions, had not provided Brewer with rest periods on 491 occasions, and had on 68 occasions knowingly and intentionally failed accurately to set forth the total hours she worked on her itemized wage statements.

The jury, although finding that Cottonwood's adverse job action against Brewer was not based on her age, nevertheless returned a special verdict finding Cottonwood had acted with oppression, fraud or malice. The court, after lengthy consultations with counsel, elected to submit a supplemental special verdict to the jury to clarify the factual basis on which the jury's oppression, fraud or malice finding was premised.[5] The supplemental special verdict returned by the jury stated that its malice conclusion was based on the Labor Code violations and not on the conduct underlying Brewer's age discrimination claim.

Over Cottonwood's objection, the jury then heard evidence solely related to Cottonwood's financial condition and considered the amount of punitive damages. The jury awarded $195,000.

### The Judgment

The judgment, as entered by the court on February 1, 2007, based on the jury's special verdicts, incorporated the jury's awards for unpaid wages in the total amount of $956.10 and punitive damages in the amount of $195,000. The judgment also included (1) $2,646 for wages due for meal period violations and $3,314.25 for wages due for rest period violations (apparently under § 226.7); (2) $4,000 as penalties pursuant to section 226; and

---

[5] The parties and the court were concerned about potential inconsistencies among the special verdicts, including whether the finding of oppression, fraud or malice was based on the acts underlying Brewer's age discrimination claim, resolved adversely to Brewer, or whether it was based on the acts underlying Brewer's Labor Code claims.

(3) $15,300 in penalties pursuant to section 1197.1.[6] The court also incorporated a provision entitling Brewer to recover attorney fees and costs pursuant to section 218.5 and costs pursuant to Code of Civil Procedure section 1032.

### Posttrial Motions

Brewer moved for an award under section 218.5 of costs in the amount of $2,764.17 (as supplementary to those costs she claimed under Code Civ. Proc., § 1032) and attorney fees of $149,160. The court denied her requested supplemental costs and awarded attorney fees in the total amount of $64,710.

The parties filed cross-motions for JNOV or alternatively for a new trial. The court denied Brewer's motion in its entirety, and denied Cottonwood's JNOV motion. However, the court entered a conditional order on Cottonwood's new trial motion, ordering that Cottonwood's motion for new trial would be denied if Brewer consented to a reduced punitive damages award of $75,000 but, absent that consent, Cottonwood's new trial motion would be granted on the grounds of excessive damages. Brewer accepted the reduced punitive damages award without waiving her appellate rights. Both parties have appealed the judgment and orders.[7]

### B. *Punitive Damages*

### General Principles

There are two sets of guiding principles that inform our decision with regard to punitive damages. First, under California law, punitive damages are constrained generally by the restriction that they are ordinarily recoverable only in "an action for the breach of an obligation not arising from contract" where the requisite culpable conduct is also present. (Civ. Code, § 3294.) "The word 'contract' is used in this section in its ordinary sense to mean an agreement between the parties, not an obligation imposed by law despite the absence of any such agreement." (*Ward v. Taggart* (1959) 51 Cal.2d 736, 743

---

[6] Although the parties do not on appeal identify the genesis of the awards under sections 226, 226.7 and 1197.1, we surmise the court entered those amounts as a matter of law based on the factual determinations by the jury quantifying the number of meal and rest period violations, the number of minimum wage violations, and the number of inaccurate itemized wage statements provided by Cottonwood to Brewer. Cottonwood does not on appeal assert that, absent procedural impediments to the awards under those statutes, the court inaccurately calculated the additional wages and penalties to be levied under those statutes.

[7] Cottonwood subsequently moved for relief under Code of Civil Procedure section 473, subdivision (d), asserting the judgment was void for lack of jurisdiction. The court denied that motion. We consider Cottonwood's appeal from the order denying section 473 relief in the companion appeal (*Brewer v. Premier Golf Properties, LP* (Dec. 3, 2008, D051841) [nonpub. opn.]) heard concurrently with this appeal.

[336 P.2d 534].) Accordingly, when the cause of action is based on an agreement between the parties, rather than ex delicto obligations arising by law, punitive damages are ordinarily not recoverable, even where the defendant has violated his or her obligations maliciously or in bad faith. (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 516 [28 Cal.Rptr.2d 475, 869 P.2d 454].)

██ Second, because the claims on which Brewer recovered involved violations of statutorily imposed obligations that accreted to the employment contract between Cottonwood and Brewer, the availability of damages may also be constrained by the so-called "new right—exclusive remedy" doctrine. As explained in *De Anza Santa Cruz Mobile Estates Homeowners Assn. v. De Anza Santa Cruz Mobile Estates* (2001) 94 Cal.App.4th 890, 912 [114 Cal.Rptr.2d 708], that doctrine provides that "[w]here a statute *creates* new rights and obligations not previously existing in the common law, the express statutory remedy is deemed to be the exclusive remedy available for statutory violations, unless it is inadequate." (Italics added; accord, *Rojo v. Kliger* (1990) 52 Cal.3d 65, 79 [276 Cal.Rptr. 130, 801 P.2d 373] [in such situations "the statutory remedy is exclusive"]; cf. *Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 900 [66 Cal.Rptr.2d 888, 941 P.2d 1157].) However, when the statute merely *recognizes* a cause of action (because the claim had a preexisting common law analogue), then "all forms of relief granted to civil litigants generally, including appropriate punitive damages, are available unless a contrary legislative intent appears." (*Turnbull & Turnbull v. ARA Transportation, Inc.* (1990) 219 Cal.App.3d 811, 826 [268 Cal.Rptr. 856] (*Turnbull*).)

*Analysis*

██ We are convinced, both by application of the "new right—exclusive remedy" doctrine and under more general principles that bar punitive damages awards absent breach of an obligation not arising from contract, punitive damages are not recoverable when liability is premised solely on the employer's violation of the Labor Code statutes that regulate meal and rest breaks, pay stubs, and minimum wage laws.

We agree with Cottonwood's contention, which Brewer does not dispute on appeal, that the Labor Code statutes regulating pay stubs (§ 226) and minimum wages (§ 1197.1) create new rights and obligations not previously existing in the common law. Moreover, those same statutes provide express statutory remedies, including penalties for the violation of those statutes that are punitive in nature, that are available when an employer has violated those provisions. Section 226, subdivision (e), provides that any employee "suffering injury as a result of a knowing and intentional failure by an employer to comply with [the pay stub requirements] is entitled to recover the greater of

all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees." Similarly, section 1197.1, subdivision (a) provides that any employer who pays or causes to be paid to any employee a wage less than the minimum wage "shall be subject to a civil penalty as follows: [¶] (1) For any initial violation that is intentionally committed, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee is underpaid[;] [¶] (2) For each subsequent violation for the same specific offense, two hundred fifty dollars ($250) for each underpaid employee for each pay period for which the employee is underpaid regardless of whether the initial violation is intentionally committed." Here, Brewer sought and recovered the maximum $4,000 penalty available for Cottonwood's pay stub violations, and the judgment contained an additional penalty of $15,300 pursuant to section 1197.1 for the overtime violations. We are not persuaded by Brewer's argument that the remedies set forth in the statutory scheme were not intended to be the exclusive remedy available for statutory violations,[8] and Brewer does not articulate any basis for concluding those penalties are so inadequate that other remedies should be permitted.

Similarly, the regulations requiring employers to provide meal breaks (§ 512) and rest breaks (Cal. Code Regs., tit. 8, § 11090, subd. 12(A)), and

---

[8] On appeal, Brewer notes that when an employer violates the "pay stub" requirements of section 226, subdivision (a), section 226.3 states that "[t]he civil penalties provided for in this section are in addition to any other penalty provided by law." Relying on this language, Brewer asserts the Legislature showed it intended to allow punitive damages for pay stub violations. However, because Brewer did not recover section 226.3 penalties, that section appears to have no application to any issue presented in this case. Moreover, even if Brewer had obtained section 226.3 penalties, that section merely provides for civil penalties *in addition to the penalties under section 226* that Brewer recovered here, and we construe the language of section 226.3 as designed to insure that the recovery of any penalties under section 226.3 would not preclude the other *statutory* penalties available for pay stub violations. For the same reasons, we believe Brewer's reliance on section 1197.1, subdivision (h), which similarly provides that "[t]he civil penalties provided for in this section are in addition to any other penalty provided by law," is misplaced. An employee who has not received the minimum wage is entitled to recover the amounts unlawfully withheld (§ 1194), plus additional amounts as penalties and liquidated damages where culpable conduct is shown (*Armenta v. Osmose, Inc.* (2005) 135 Cal.App.4th 314, 325–326 [37 Cal.Rptr.3d 460] ["waiting time" penalties under § 203 available where employer failed to pay minimum wage]; § 1194.2 [liquidated damages award]), and the additional civil penalties under section 1197.1 "are in addition to any other penalty provided by law" for failure to pay minimum wages. We thus construe section 1197.1's language as having the same purpose as section 226.3's identical language: to insure that the recovery of any civil penalties under section 1197.1 would not preclude the other *statutory* penalties available for minimum wage violations. Section 1197.1 does not appear to have any relevance to whether *punitive* damages under Civil Code section 3294 are available for Labor Code violations.

providing numerous forms of remedies for their violation, also appear to have created new rights and obligations not previously existing in the common law, and the statutory scheme provides "a comprehensive and detailed remedial scheme for its enforcement." (*Rojo v. Kliger, supra*, 52 Cal.3d at p. 79.) Those remedies include an award in the nature of liquidated damages under section 226.7 (cf. *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1112 [56 Cal.Rptr.3d 880, 155 P.3d 284] [because "damages [from missed meal and rest breaks] are obscure and difficult to prove, the Legislature may select a set amount of compensation [for the violation] without converting that remedy into a penalty" for statute of limitations purposes]), injunctive relief (see generally § 1194.5), and potential statutory penalties (see § 558).[9] We are convinced that, because the meal and rest break provisions of the Labor Code "established a new and comprehensive set of rights and remedies for [employees] . . . [and] [n]o such specialized rights and remedies existed at common law. . . . the remedy provided in the statute 'is exclusive of all others unless the statutory remedy is inadequate.' [*Turnbull, supra*, 219 Cal.App.3d at p. 827.]" (*De Anza Santa Cruz Mobile Estates Homeowners Assn. v. De Anza Santa Cruz Mobile Estates, supra*, 94 Cal.App.4th at p. 916.)

 Brewer argues that *Turnbull* and *Commodore Home Systems, Inc. v. Superior Court* (1982) 32 Cal.3d 211 [185 Cal.Rptr. 270, 649 P.2d 912], among other cases, have concluded that "[w]hen a statute recognizes a cause of action for violation of a right, all forms of relief granted to civil litigants generally, including appropriate punitive damages, are available unless a contrary legislative intent appears" (*Commodore*, at p. 215; see *Turnbull, supra*, 219 Cal.App.3d at p. 826), regardless of whether the right embodied in the statute had a common law analogue that would have supported a cause of action for which punitive damages were recoverable. Neither case supports Brewer's argument. The language contained in *Turnbull* was dicta, because that court ultimately concluded the statute in issue there *did* limit the plaintiff to the prescribed statutory remedies. (*Turnbull*, at p. 827.) *Commodore* is equally inapposite. In *Commodore*, the court evaluated whether an employee who alleged he was discharged because of his race could recover punitive damages even though such damages were not identified as a recoverable damage under the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.). *Commodore* concluded punitive damages were recoverable, based in part on the absence of any statutory delineation of the

---

[9] To the extent section 226.7 imposes a requirement to compensate the employee with "premium wage[s] intended to compensate employees" for the missed meal or rest breaks (*Murphy v. Kenneth Cole Productions, Inc., supra*, 40 Cal.4th at p. 1114), and the employer failed to pay the employee the additional compensation required by section 226.7, the additional penalties applicable for "pay stub" violations or other defaults in the payment of wages due (such as the "waiting time" penalties under § 203) are arguably triggered.

remedies available in civil suits, but more importantly because the common law already recognized a tort cause of action for wrongful discharge in violation of public policy that supported recovery of punitive damages, including wrongful discharge based on racial animus. (*Commodore*, at pp. 219–221.) Because the FEHA expressly disclaimed an intent to repeal any California laws relating to racial discrimination that encompass the common law remedies available for racial discrimination in California (*Rojo v. Kliger, supra*, 52 Cal.3d at pp. 73–75), *Commodore* stands for the limited proposition that, when a statute embodies a right whose common law analogue would have supported a cause of action for which punitive damages were recoverable, the statute will not be deemed to have eliminated the existing available remedies unless a contrary legislative intent appears.[10]

We are also convinced that, even were the remedies provided by the statutory scheme not the exclusive remedies for the new rights, punitive damages would nevertheless be unavailable because punitive damages are ordinarily limited to actions "for the breach of an obligation not arising from contract" (Civ. Code, § 3294), and Brewer's claims for unpaid wages and unprovided meal/rest breaks arise from rights based on her employment contract. Brewer argues, without citation to relevant authority, that Cottonwood's breach of its statutory obligations under the Labor Code is a "breach of an obligation not arising from contract," thereby supporting the award of punitive damages. However, in analogous situations, the courts have recognized that, when a statute imposes additional obligations on an underlying contractual relationship, a breach of the statutory obligation is a breach of contract that will not support tort damages beyond those contained in the statute.[11] (See, e.g., *Kwan v. Mercedes-Benz of North America, Inc.* (1994) 23

---

[10] Other cases upholding the right to recover punitive damages are in accord. For example, although the court in *Greenberg v. Western Turf Assn.* (1903) 140 Cal. 357 [73 P. 1050] held a claim filed under a statute guaranteeing access to public accommodations free from racial discrimination could support punitive damages, the statute there did have a common law analogue—"the common law doctrine that a business affected with a public interest must serve all customers on reasonable terms without discrimination" (*Gay Law Students Assn. v. Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 489–490 [156 Cal.Rptr. 14, 595 P.2d 592])—the same analogue relied on in *Commodore* to support a punitive damages award. Similarly, the court in *Lowe v. Yolo County etc. Water Co.* (1908) 8 Cal.App. 167 [96 P. 379], approving the potential recovery of exemplary damages on a claim the defendant violated his obligation under a statute to provide irrigation water, noted the right sued upon—to obtain water—was (like the right to be free from racial discrimination) not a right "aris[ing] from the statute, but [was] created rather by the constitution" (*id.* at p. 174), and the deprivation of that right could be actionable in tort (*id.* at pp. 174–175).

[11] Although *Story v. Gateway Chevrolet Co.* (1965) 237 Cal.App.2d 705 [47 Cal.Rptr. 267] appears at first glance to have reached a different result, because the action sought rescission of a sales contract for violating Civil Code section 2982's required disclosures in a conditional sales contract and the court upheld a punitive damages award, a close reading shows the court's ruling on punitive damages was not tethered to the conduct violating the statutory

Cal.App.4th 174, 187–192 [28 Cal.Rptr.2d 371] [breach of consumer warranty law obligations is breach of contract and does not support tort damages for emotional distress].)

██ We apprehend the Labor Code provisions governing meal and rest breaks, minimum wages, and accurate pay stubs constitute statutory obligations imposed only when the parties have entered into an employment contract and are obligations *arising from* the employment contract. The breach of an obligation arising out of an employment contract, even when the obligation is implied in law, permits contractual damages but does not support tort recoveries. (Cf. *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 700 [254 Cal.Rptr. 211, 765 P.2d 373].) ██ Although Brewer relies on language from *Gould v. Maryland Sound Industries, Inc.* (1995) 31 Cal.App.4th 1137, 1147 [37 Cal.Rptr.2d 718] to assert prompt payment of wages involves sufficiently fundamental public polices that the willful failure to make such payments will support punitive damages, the court in *Gould* expressly recognized that, although a claim for wrongful *discharge* in violation of public policy would state a tort claim, a claim seeking tort recoveries based on the allegation the employer *otherwise* breached the employment contract agreement was barred by *Foley*. (*Gould*, at p. 1155.)

*Conclusion*

We conclude the Labor Code violations for which Cottonwood was found liable do not support punitive damages under Civil Code section 3294, and therefore we reverse the award.

C. *The Trial Court's Award of Damages and Penalties Under the Labor Code*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III, IV\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

provisions. To the contrary, the court specifically noted that "[a]ppellants' contention [that punitive damages under section 3294 may not be awarded for failure to comply with the statutory obligations] might have merit if all that was involved here was an innocent failure on the part of appellants to conform their contract to the requirements of the statute." (*Story*, at p. 710.) However, the court then approved punitive damages by describing *additional* conduct by the appellants that sounded in fraud, assault, conversion and trespass (*id.* at pp. 710–711), any one of which would support punitive damages.

\*See footnote, *ante*, page 1243.

## DISPOSITION

The judgment, insofar as it includes an award of punitive damages, is reversed, and the trial court shall on remand enter a new judgment striking the award of punitive damages. The award of attorney fees is reversed and remanded with instructions to reconsider the award of attorney fees in accordance with this opinion. In all other respects the judgment is affirmed. The parties shall bear their own costs on appeal.

McConnell, P. J., and Aaron, J., concurred.

The petition of appellant Christine Brewer for review by the Supreme Court was denied March 18, 2009, S169666. Kennard, J., was of the opinion that the petition should be granted.