Filed 10/16/14  Pynoos v. Massman CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| RITA J. PYNOOS, as Trustee, etc., et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>STEPHEN MASSMAN,<br><br>Defendant and Appellant. | B249711<br><br>(Los Angeles County<br>Super. Ct. No. BC480167) |

APPEALS from a judgment of the Superior Court of Los Angeles County. Ralph W. Dau, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Kelley Drye & Warren, Andrew M. White, Allison S. Brehm, Damaris M. Diaz, and Joshua M. Keesan for Plaintiffs and Appellants.

Reed Smith, Bernard P. Simons, Margaret M. Grignon, Pavel Ekmekchyan, Anne M. Grignon, and Thuy Tran for Defendant and Appellant.

Morrill Law Firm, Joseph M. Morrill, and Andrew R. Verriere for Amicus Curiae Contra Costa Senior Legal Services on behalf of Plaintiffs and Appellants.

A limited partnership dissolves and distributes its assets. One of the limited partnership interests is held in the name of a living trust. The trust's sole trustee and primary beneficiary is a 90-year-old woman. Can she sue the partnership's general partner for elder abuse when the *trust* holds the limited partnership interest? We conclude that the trustee/beneficiary may sue for elder abuse. We also address the parties' remaining contentions, and conclude the punitive damages award was properly stricken, but the jury's award of prejudgment interest should be reinstated.

## FACTS

Morris Pynoos (Morris)[1] and Stephen Massman (Massman) formed the Kingswood Village-Marina Partnership (Partnership) in 1974 to build and manage a luxury high-rise in Marina Del Rey. Morris and Massman served as general partners, and the Partnership added 30 or so limited partners as capital investors. A few years in, Massman and Morris also became limited partners when they invested additional capital.

By 2002, Morris no longer held any of his interest in the Partnership in his own name. He gave away 3.6 percent of his limited partnership interest, 1.8 percent to each of his sons, plaintiffs Jonathon Pynoos (Jonathon) and Robert Pynoos (Robert). He transferred the remainder—his 10 percent general partnership interest and a 4.4 percent limited partnership interest—into a living trust. When Morris died in 2002, his 10 percent general partnership interest converted to a limited partnership interest. The resulting 14.4 percent limited partnership interest was held in the trust's name. Morris's elderly widow, plaintiff Rita Pynoos (Rita), became the sole trustee and primary beneficiary of the trust.

In 2004, the Partnership sold the high-rise, its sole asset, for a nearly $60 million profit. Because some of the partners agreed to payment in the new owners' stock rather than cash, the net cash profit came to approximately $50 million. Massman, as the

---

[1] Because several members of the Pynoos family are involved in this case, we use first names; no disrespect is intended.

2

remaining general partner, spent the next six years winding down the Partnership. The Partnership distributed cash to its partners in 2004, 2008, and 2010.

The Partnership Agreement (Agreement) laid out how annual profits and losses, as well as proceeds from the sale of the building, were to be allocated and distributed to the partners. Annual profits and losses were to be allocated and distributed according to each partner's proportional interest in the partnership (the so-called "fractional interest"). Proceeds from the sale of property were to be allocated and distributed in a two-step process: The first step looked to the balance of each partner's "capital account," which was a mechanism used to keep track of each partner's deposits and withdrawals of capital as well as profits and losses allocated to that partner; the second step looked to fractional interest.

Massman did not follow the Agreement when distributing the proceeds from the building sale; instead, he relied solely upon fractional interest. This yielded a total distribution of $8.25 million to the trust, and $1.03 million to each Jonathon and Robert. But by skipping the first step, the trust was shortchanged $233,072; Jonathon, $60,842; and Robert, $60,841. Massman received $243,941 too much.

## PROCEDURAL HISTORY

Rita, as trustee for and primary beneficiary of the trust, and her sons (collectively, plaintiffs) sued Massman. Among other claims, they sued for breach of contract, breach of fiduciary duty, elder abuse, and fraud.

Plaintiffs alleged that Massman committed financial elder abuse by wrongly retaining Rita's property when he did not pay the trust what it was due under the Agreement. The trial court sustained a demurrer to this claim without leave to amend because, in its view, plaintiffs were unable to allege that Massman retained the "personal property of an elder."

Plaintiffs also alleged that Massman defrauded them by misleading them into thinking he was complying with the Agreement, which caused them not to review the Partnership's books or seek to appoint a receiver sooner. The trial court sustained a

3

demurrer to this claim without leave to amend because plaintiffs never alleged how the delay in requesting an audit or a receiver damaged them.

The case went to trial on plaintiffs' claims of breach of contract and breach of fiduciary duty.

On the breach of contract claim, Massman did not dispute his noncompliance with the Agreement. Instead, he presented evidence and argued that his noncompliance was justified by (1) the Partnership's prior practice of making distributions solely by fractional interest, and (2) the impropriety of looking to plaintiffs' capital account balances. Massman thought these balances, which were derived from Morris's limited partnership interest, were "out of whack" because Morris's later-created interest never took the tax write-off that all the originally created interests had taken.

On the breach of fiduciary duty claim, plaintiffs presented evidence and argued that Massman did not follow the Agreement and received a bigger distribution than he should have; Massman considered more than one possible way to make the 2008 distribution and chose the one that most favored him; and Massman filed a lawsuit in 2009 on behalf of the Partnership and allocated the cost of that suit to the four limited partners who had positive capital account balances (including plaintiffs), even though the lawsuit helped only those partners who took payment in the new owner's stock.

The jury was instructed on these two theories, on its discretion to award prejudgment interest as to both, and on punitive damages. The jury found for plaintiffs on both claims; awarded compensatory damages equaling what plaintiffs would have received had the Agreement been followed; awarded prejudgment interest; and found that Massman's acts were malicious, oppressive, and/or fraudulent. After a brief, second phase, the jury awarded punitive damages of $500,000 to the trust, and $250,000 to each Jonathon and Robert.

Following trial, the trial court partially granted Massman's motion for judgment notwithstanding the verdict. The court affirmed the breach of contract and breach of fiduciary duty verdicts, but overturned the jury's award of punitive damages and prejudgment interest.

4

The court vacated the punitive damages award for two reasons—one legal, the other evidentiary. Concluding that the breach of fiduciary duty claim presented at trial was "all based upon" Massman's breach of the Agreement, the court ruled that punitive damages were barred by Civil Code section 3294, subdivision (a)'s requirement that such damages "not aris[e] from contract." The court also found insufficient evidence of malice, oppression, or fraud.

The court vacated the prejudgment interest award because, in its view, the jury's award rested solely on Civil Code section 3288. Because section 3288 only authorizes prejudgment interest for claims not based in contract, the court's finding that plaintiffs' claims were contract-based meant that the interest award was unauthorized.

Everyone appealed.

## DISCUSSION

### Plaintiffs' Appeal

## I.     Demurrers

Our task in reviewing an order sustaining a demurrer without leave to amend is twofold: We ask "whether the complaint states facts sufficient to constitute a cause of action," and "whether there is a reasonable possibility that the defect can be cured by amendment." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

### A.     Elder Abuse

Elders (or their heirs) may sue those who take advantage of them for "financial abuse." (Welf. & Inst. Code, § 15610.30.) "Financial abuse" of an "elder" occurs when a person (1) "[t]akes, secretes, appropriates, obtains, or retains," (2) the "real or personal property of an elder," (3) "for a wrongful use or with intent to defraud, or both." (*Id.*, § 15610.30, subd. (a)(1).) A plaintiff satisfies the first two elements by showing that she was "deprived of any property right . . . *regardless of whether the property is held directly or by a representative of an elder.*" (*Id.*, § 15610.30, subd. (c), italics added.) A "representative" is defined as a person who is "[a] conservator, trustee, or other representative of the estate of an elder" or "[a]n attorney-in-fact of an elder." (*Id.*, § 15610.30, subd. (d).)

5

Rita contends that the distributions Massman wrongfully retained were *her* "personal property," even though they were held in the name of the living trust of which she was the sole trustee and primary beneficiary. The trial court disagreed, and drew a distinction between Rita and the trust. We agree with Rita.

Living trusts are express trusts (e.g., *Keitel v. Heubel* (2002) 103 Cal.App.4th 324, 337; *Estate of Heggstad* (1993) 16 Cal.App.4th 943, 947-948), and "'an ordinary express trust *is not an entity separate from its trustees*'" (*Presta v. Tepper* (2009) 179 Cal.App.4th 909, 914, quoting *Powers v. Ashton* (1975) 45 Cal.App.3d 783, 787; *Ziegler v. Nickel* (1998) 64 Cal.App.4th 545, 548). Rather, the trust represents "'a fiduciary *relationship* with respect to property.'" (*Moeller v. Superior Court* (1997) 16 Cal.4th 1124, 1132 & fn.3, quoting Rest.2d Trusts, § 2, p. 6.) This is why elders who are duped into exercising their power as trustees to transfer trust property to a fraudster can sue that fraudster for elder abuse. (See, e.g., *Bounds v. Superior Court* (2014) 229 Cal.App.4th 468, 473-474, 478-480 (*Bounds*) [elder abuse claim to cancel agreement, made by an elder acting as trustee, to sell trust assets]; *Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 164-165, 173-175 [elder abuse claim to recover trust assets transferred by an elder acting as trustee]; *Wood v. Jamison* (2008) 167 Cal.App.4th 156, 158-165 [same]; *Estate of Lowrie* (2004) 118 Cal.App.4th 220, 225-226 (*Lowrie*) [same].) If this were not the rule, elders who elect to use living trusts as an estate planning tool would forfeit their ability—and the ability of their heirs—to pursue elder abuse claims should the elders be manipulated into transferring property out of the trust and into an abuser's pocket.

Massman disputes this analysis. He contends that property held in trust may only be treated as the "personal property" of an elder if the trust is revocable, *and* the trust and the elder are one and the same (ostensibly when the elder is the trustee and sole beneficiary). Whether the trust is revocable or irrevocable is irrelevant in this case. Although a trustee of an irrevocable trust could not be swindled into transferring away the corpus of that trust (because she would lack the power to do so [*Empire Properties v. County of Los Angeles* (1996) 44 Cal.App.4th 781, 787]), Massman is alleged to have withheld property from the trust. *That* can occur no matter what power the trustee has to

6

control the trust corpus. Nor is there insufficient identity in this case, where Rita is both the sole trustee and the primary beneficiary of the trust. More broadly, the distinctions Massman asks us to draw are fine ones that appear nowhere in the text of the elder abuse statute and are at odds with the statute's overarching purpose to "enable interested persons to engage attorneys to take up the cause of abused elderly persons." (Welf. & Inst. Code, § 15600, subd. (j).)

We are unpersuaded by the remaining arguments in support of the trial court's ruling. The court offered a second rationale in support of dismissal—namely, that Rita's entitlement to the distributions was too speculative and contingent to be considered her property until she prevailed in a lawsuit establishing Massman's underpayment. To be sure, a plaintiff must have a sufficiently definite interest in the property allegedly taken to sue for elder abuse. (E.g.*, Johnston v. Allstate Ins. Co.* (S.D. Cal. May 23, 2013) 2013 U.S. Dist. LEXIS 73424, *10-*11.) Thus, property rights that spring into existence only upon the happening of an event (*ibid.* [entitlement to insurance proceeds contingent upon happening of covered event]), or that can be unilaterally divested by another (*Estate of Giraldin* (2012) 55 Cal.4th 1058, 1065-1066 [expectation of inheritance from fully revocable living trust]) are too speculative to support an elder abuse claim. But Morris's death rendered the living trust in this case irrevocable, and at that point Rita's interest as sole trustee and primary beneficiary became definite enough to support her claim. (Accord, *Bounds, supra*, 229 Cal.App.4th at pp. 479-482 [challenge to executed but unconsummated escrow instructions sufficiently definite]; cf. *Estate of Giraldin, supra*, 55 Cal.4th at pp. 1065-1066.) Further, we see no reason for an elder abuse plaintiff to bring two lawsuits—one to establish entitlement to property, and a second to enforce the loss of that property as elder abuse—when both issues can be litigated in a single suit.

Massman proffers four other reasons why we should affirm. He asserts that Welfare and Institutions Code section 15610.30 forecloses our reading of the statute. Section 15610.30, he argues, only allows an elder to sue when property is held by her "directly or *by [her] representative*" (Welf. & Inst. Code, § 15610.30, subd. (c)), italics added), and defines "representative" as persons acting on behalf of a deceased or

incompetent elder (*id.*, § 15610.30, subd. (d)).  Because an elder acting as the trustee of a living trust is both competent and alive, Massman concludes, she is not the same type of "representative" contemplated by section 15610.30.  (See *Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 169 [admonishing courts not to construe ambiguous terms in a list in a manner "'markedly dissimilar to the other items in the list'"], quoting *Moore v. California State Bd. of Accountancy* (1992) 2 Cal.4th 999, 1011-1012.)  The meaning of "representative" is beside the point because, as explained above, Rita's dual role as trustee and primary beneficiary means that she possesses the limited partnership interest "directly."

Massman next contends that Rita's claim is outside the heartland of misconduct the elder abuse statute was designed to deter.  He asserts that the statute is aimed at protecting elderly who are infirm or dependent, and thus "vulnerable" (*Lowrie, supra*, 118 Cal.App.4th at p. 226), and was not meant to apply to persons—like Rita—who are sophisticated, wealthy investors with a business dispute.  But the statute's plain language does not exempt from its reach claims brought by the wealthy or claims involving business disputes, and courts have declined to create such exceptions.  (E.g., *Bonfigli v. Strachan* (2011) 192 Cal.App.4th 1302, 1315 ["[t]he statutory provisions are not limited to . . . persons of limited financial means"]; *id.* at p. 1316 [claim arising out of a breach of contract stated "skeletal claim" for elder abuse]; accord, *Wood v. Santa Monica Escrow Co.* (2007) 151 Cal.App.4th 1186 [case involving elder abuse and breach of contract arising from same transaction].)  We also decline to do so.

Massman further argues that plaintiffs did not sufficiently plead, and can never prove, that he made "wrongful use" of the withheld distributions.  While specificity is required for statutory causes of action (*Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 790), plaintiffs alleged "wrongful use" and incorporated the operative complaint's general allegations that set forth how Massman made distributions to plaintiffs' detriment and his benefit.  For purposes of pleading, that suffices.  Massman's further argument that he may later be able to prove that Agreement immunized him from liability is irrelevant to the demurrer.

8

Massman lastly asserts that we lack jurisdiction to review this issue because the trial court sustained the demurrer against Rita in her individual capacity *and* as trustee, but only entered judgment against Rita as trustee. As noted above, the trust is not a separate entity from Rita. More to the point, the trial court's ruling on the elder abuse claim was final, as it left "no issue . . . for further consideration." (*Breslin v. City and County of San Francisco* (2007) 146 Cal.App.4th 1064, 1074.)

Rita's elder abuse claim must accordingly be reinstated. Because, as explained below, we affirm the trial court's ruling overturning the punitive damages for insufficient evidence, our ruling is law of the case and precludes such damages on the elder abuse claim. (*Bank of America v. Superior Court* (1990) 220 Cal.App.3d 613, 623-624 [sufficiency-of-evidence ruling on appeal is law of the case on remand].) Any other outcome would improperly "afford[] plaintiffs a second chance to prove their case which they would not have had if the trial court had acted correctly." (*Id.* at p. 625.)

### B.     Fraud

An "essential" element of any fraud claim is that "the person complaining of fraud actually have relied on the alleged fraud, and suffered damages as a result." (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 482.) Put differently, there must be a "nexus between the alleged fraudulent [conduct] by [the defendant] and the economic harm [the plaintiffs] have suffered." (*Bank of America Corp. v. Superior Court* (2011) 198 Cal.App.4th 862, 873.)

Plaintiffs alleged that Massman's misrepresentations and omissions caused them not to request an audit or appointment of a receiver at some earlier but unspecified point in time. Though plaintiffs received five opportunities to allege their fraud claim, including an attempt after the sustaining of a demurrer with leave to amend, they never alleged how they were damaged by their delayed action. The trial court concluded that the required nexus was missing, and sustained the demurrer without leave to amend. We agree.

It is undisputed that plaintiffs eventually conducted their audit and brought this lawsuit to recover the full amount of under-distribution. Plaintiffs assert that they might

9

have been able to stop some of the later misallocations before they happened. This lawsuit enables them to be made whole, so there appears to be no damage *from the delay*, and that is the sole harm alleged in their fraud claim. We concur with the trial court that further amendment would be futile.

## II.   Posttrial Motions

We review a trial court's grant of judgment notwithstanding the verdict de novo if it is based upon purely legal questions, and for substantial evidence if it challenges the sufficiency of evidence presented at trial. (*Hasso v. Hapke* (2014) 227 Cal.App.4th 107, 119 (*Hasso*).) When undertaking substantial evidence review, we assess whether the judgment is supported by "evidence which is reasonable, credible, and of solid value" and resolve all conflicting evidence and credibility calls in favor of the verdict. (*In re I.R.* (2014) 226 Cal.App.4th 201, 211.) We may strike punitive damages (or affirm a trial court's order striking them) if they were awarded in error. (*Crogan v. Metz* (1956) 47 Cal.2d 398, 405 (*Crogan*).)

### A.   Punitive Damages

#### 1.   Arising Out of Contract

Punitive damages may be awarded against a defendant who acts with "oppression, fraud, or malice," but only if the defendant has "breach[ed] . . . an obligation *not arising from contract.*" (Civ. Code, § 3294, subd. (a), italics added.) This language draws a firm line between torts and contracts (*Erlich v. Menezes* (1999) 21 Cal.4th 543, 550-551 (*Erlich*); *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 514-516; accord, *Ward v. Taggart* (1959) 51 Cal.2d 736, 743), and authorizes punitive damages for the former but prohibits them in the latter—even if the breach of contract is """"willful, fraudulent, or malicious"""" (*Cates Construction Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 61 (*Cates Construction*); *Crogan, supra*, 47 Cal.2d at p. 405), or "in bad faith" (*Brewer v. Premier Golf Properties, LP* (2008) 168 Cal.App.4th 1243, 1252 (*Brewer*)).

*Defining* contract actions and tort actions is relatively simple: Contract actions "enforce the intentions of the parties to [an] agreement," while tort actions are "primarily

designed to vindicate 'social policy.'" (*Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 683.) *Distinguishing* between them can be far more difficult, particularly where—as here—the defendant's alleged conduct can constitute both a breach of contract *and* the tort of breach of fiduciary duty. (*Enea v. Superior Court* (2005) 132 Cal.App.4th 1559, 1564 (*Enea*); *Kangarlou v. Progressive Title Co., Inc.* (2005) 128 Cal.App.4th 1174, 1178.) Maintaining the line between contract and tort is nevertheless critical if Civil Code section 3294's limitation is to have any meaning. (*Erlich, supra*, 21 Cal.4th at p. 551 [noting importance of resisting "pressure to obliterate the distinction between contracts and torts"].)

Where a particular set of facts can qualify as—and is alleged to be—both a contract and a tort, the availability of punitive damages turns on whether the claim is, at bottom, "based on" a breach of contract or a breach of an independent legal duty that gives rise to the tort. (*Brewer, supra*, 168 Cal.App.4th at p. 1252; *Arthur L. Sachs v. City of Oceanside* (1984) 151 Cal.App.3d 315, 322 [looking to "the nature of the right sued upon"]; *Voth v. Wasco Public Util. Dist.* (1976) 56 Cal.App.3d 353, 356 [looking to the "quintessence of the action"]; *Brockway v. Heilman* (1967) 250 Cal.App.2d 807, 812 [looking to "the gravamen of an action"].)

Where a lawsuit is primarily grounded in the commission of an independent tort, the fact that the defendant's conduct also breaches a contract between the parties will not preclude punitive damages; in that situation, the contract is "incidental" to the tort. Consequently, courts have upheld punitive damages awards where the defendant wrongfully converted joint venture assets (*Foster v. Keating* (1953) 120 Cal.App.2d 435, 445, 454-455); committed fraud in the inducement of a contract (*Squire's Dep't Store, Inc. v. Dudum* (1953) 115 Cal.App.2d 320, 324); set up a competing business while acting as corporate officer (*Sequoia Vacuum Systems v. Stransky* (1964) 229 Cal.App.2d 281, 286-289); threatened to resign as trustee of a retirement fund unless investors invested in its own stock (*Vale v. Union Bank* (1979) 88 Cal.App.3d 330, 334-335, 339); or engaged in unfair competition by soliciting a former employer's customers (*Southern California Disinfecting Co. v. Lomkin* (1960) 183 Cal.App.2d 431, 451). (See also

11

*William L. Lyon & Associates, Inc. v. Superior Court* (2012) 204 Cal.App.4th 1294, 1311-1312 [broker owes client fiduciary duty irrespective of contract; punitive damages recoverable].)

But where the gist of the action is the defendant's noncompliance with the terms of a contract (e.g*., Doyle v. Chief Oil Co.* (1944) 64 Cal.App.2d 284, 295 [misallocation of royalties under contract; no punitive damages]), punitive damages are barred by Civil Code section 3294. The sole exception to this principle involves courts treating the breach of the covenant of good faith and fair dealing as a tort for which punitive damages may be recovered. Because this is a "major departure" from the general rule and risks becoming an exception that swallows the rule, courts have confined such recovery to insurance policy contracts (*Cates Construction, supra*, 21 Cal.4th at pp. 34-35, 41-46); pension contracts between employers and employees (*Hannon Engineering, Inc. v. Reim* (1981) 126 Cal.App.3d 415, 425-427); and other adhesion contracts where the parties have a disparity in bargaining power (*id.* at p. 426). Contracts involving investors fall outside this narrow exception. (*Trs. of Capital Wholesale Elec. Etc. Fund v. Shearson Lehman Bros.* (1990) 221 Cal.App.3d 617, 625-626.)

In this case, plaintiffs' fiduciary duty claim is based upon Massman's breach of the Agreement. Plaintiffs argued to the jury that Massman breached his "fiduciary duty . . . to follow the terms of the partnership agreement." Moreover, the damages they sought were identical to those they sought for breach of contract—namely, the distributions to which they were entitled under their interpretation of the Agreement.

Plaintiffs offer three arguments in response. First, they contend that they presented evidence that Massman engaged in "self-dealing" because he personally benefitted from the fractional interest-based distribution and because he misallocated the legal costs of the 2009 lawsuit to the limited partners having a positive capital account balance. But these claims of self-dealing do not state the violation of an independent tort duty. Indeed, they have meaning (and are actionable) only by reference to the Agreement. Plaintiffs' reliance on *Bardis v. Oates* (2004) 119 Cal.App.4th 1 is unhelpful because that case did not pass on the propriety of punitive damages. (*Id.* at p. 16.) Nor is

12

it significant that Massman benefitted from the breach of contract. If a defendant's personal benefit were enough to transform a breach of contract into an actionable tort, the line between contract and tort would no longer exist. Second, plaintiffs point to the Nevada Supreme Court's decision in *Clark v. Lubritz* (Nev. 1997) 113 Nev. 1089. *Clark* held that "the breach of a fiduciary duty arising from [a] partnership agreement is a separate tort upon which punitive damages may be based." (*Id.* at p. 1098.) As explained above, the law in California is different. Lastly, plaintiffs assert that foreclosing punitive damages in this case would foreclose such damages in all cases involving a breach of fiduciary duty if a contract is in any way involved. We disagree, as we are doing no more than applying the longstanding rule and agreeing with the trial court that the contract in this case is not "incidental."

### 2. Sufficiency of the Evidence

The trial court alternatively ruled that plaintiffs had not adduced sufficient evidence to support an award of punitive damages. Any such award is predicated upon a finding that the defendant "has been guilty of oppression, fraud, or malice." (Civ. Code, § 3294, subd. (a).) "Malice" is intentional conduct aimed at causing injury or "despicable conduct . . . carried on . . . with a willful and conscious disregard of the rights or safety of others." (*Id.*, § 3294, subd. (c)(1).) "Oppression" is "despicable conduct" that subjects a person to "cruel and unjust hardship in conscious disregard of that person's rights." (*Id.*, § 3294, subd. (c)(2).) "Fraud" reaches intentional misrepresentations or omissions aimed at depriving a person of property. (*Id.*, § 3294, subd. (c)(3).) Although a plaintiff must make this showing by clear and convincing evidence at trial, that elevated burden drops out of the equation when we evaluate the sufficiency of evidence on appeal. (E.g., *In re Marriage of E. & Stephen P.* (2013) 213 Cal.App.4th 983, 989-990.) We apply the usual standard discussed above.

Plaintiffs argue that the jury's finding that Massman acted with malice, oppression, or fraud is justified by several acts. They contend that Massman's distributions benefited him at plaintiffs' expense. But that establishes at most a breach of contract or breach of fiduciary duty, neither of which is enough by itself to support a

13

punitive damages award. (Civ. Code, § 3294, subd. (a) [no punitive damages in contract cases]; *Flyer's Body Shop Profit Sharing Plan v. Ticor Title Ins. Co.* (1986) 185 Cal.App.3d 1149, 1154 ["[A] breach of a fiduciary duty alone . . . does not permit an award of punitive damages."].) Plaintiffs assert that Massman looked at two spreadsheet proposals for the 2008 distribution and chose the one that benefited him more. Relatedly, plaintiffs posit that Massman did not produce these spreadsheets in discovery. These points add little, if anything, to the first argument and fall short of the type of "despicable conduct" contemplated by Civil Code section 3294. Plaintiffs lastly assert that Massman engaged in fraud by promising Robert and Jonathon, in a 2007 letter, that he would distribute to them the full balance of their capital accounts. But the letter refers to distributions of "remaining undistributed capital [attributable to each brother]," and says nothing about "capital *accounts*."

Our independent review of the trial transcript confirms the propriety of the trial court's ruling. Massman did not follow the Agreement and, on balance, gave himself more than if he had followed the Agreement, but he sometimes under-distributed to himself. The jury rejected Massman's excuses and found that he deprived plaintiffs of their fair share. However, the record does not support the finding that his conduct was malicious, oppressive, or fraudulent within the meaning of punitive damages law.[2]

**B.     Prejudgment Interest**

A party who suffers injury can sometimes recover interest on the damages suffered starting from the date of the injury rather than the date judgment is entered. (Civ. Code, §§ 3287, 3288.) This entitlement hinges on the nature of the underlying injury. For contract-based claims, prejudgment interest may be awarded as long as the damages are "liquidated." (Civ. Code, § 3287, subd. (b); *Jamison v. Jamison* (2008) 164 Cal.App.4th 714, 721.) For noncontract claims, prejudgment interest may be awarded even on

---

[2]     In this light of ruling, we need not decide whether the size of the punitive damages award exceeded constitutional limits.

14

unliquidated damages. (Civ. Code, § 3288; *Canavin v. Pac. Southwest Airlines* (1983) 148 Cal.App.3d 512, 524-525.)

In this case, the trial court said it was compelled to vacate the jury's award of prejudgment interest by virtue of its ruling that plaintiffs' breach of fiduciary claim was, in effect, a contract claim; in the court's view, the jury's interest award was tied solely to the breach of fiduciary damages. We disagree.

To begin, the jury awarded interest on both the contract and breach of fiduciary duty claims. The jury was instructed that it could award judgment for *each* claim individually. But as to prejudgment interest, the verdict form included a single, unified question following questions regarding liability and damages for each individual claim. We have no basis to infer that the jury awarded prejudgment interest on one claim and not the other.

Moreover, the jury's award of prejudgment interest on the contract claim was proper. Contract damages are "liquidated" if they are "certain, or capable of being made certain by calculation." (Civ. Code, § 3287, subd. (a); *Worthington Corp. v. El Chicote Ranch Properties, Ltd.* (1967) 255 Cal.App.2d 316, 322 (*Worthington Corp.*).) If the amount of damages arising from a contract breach is contested and can only be resolved by resort to a trier of fact, the damages are not "liquidated." (*Polster, Inc. v. Swing* (1985) 164 Cal.App.3d 427, 434.) Here, plaintiffs' contract damages were liquidated because they could be "capable of being made certain by calculation." (*Ibid*.) Plaintiffs were able to consult the Agreement to calculate precisely how much they were underpaid. (Accord, *Pluth v. Smith* (1962) 205 Cal.App.2d 818, 826-827 [awarding prejudgment interest in a partnership accounting case].) Tellingly, Massman did not at trial contest plaintiffs' calculation.

Massman defends the trial court's ruling on three grounds. He first argues that plaintiffs waived the issue by not seeking prejudgment interest on their *contract* claim. There was no waiver. The jury was instructed on this theory, and plaintiffs raised it in their posttrial papers. Massman further asserts that only a *court* may award prejudgment interest in a contract case, and here the *jury* did so. This argument finds no support in

15

section 3287 or the case law. (See *Worthington Corp., supra*, 255 Cal.App.2d at p. 327.) Massman finally argues that the damages were contested (and thus not liquidated), but cites evidence contesting his *liability*. "Uncertainty as to *liability* is irrelevant" to the propriety of prejudgment interest. (*Howard v. American National Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 535.)

We accordingly reinstate the prejudgment interest award.

### Massman's Cross-appeal

Massman argues that the trial court erroneously declined to direct verdicts for him on the breach of contract and breach of fiduciary duty claims.

### I. Breach of Contract Claim

Massman concedes he did not adhere to the Agreement's terms when making distributions. Instead, he argues that he had good reasons for doing so that preclude a finding that he breached the contract that he otherwise admits not following.

Some of these reasons were presented to—and implicitly rejected by—the jury. In particular, Massman presented evidence that (1) the capital account balances and fractional interests were "out of whack" (although evidence as to *why* was not admitted); (2) adhering to the Agreement by reference to capital account balances would have given plaintiffs more than their fair share; (3) the Partnership made all previous distributions by fractional interest (although none called for resort to capital account balances under the Agreement); and (4) Massman was at most negligent, and thus immune from personal liability under the Agreement. The jury heard evidence on all four issues, and was specifically instructed on the Agreement's immunity provision. Because "contradicted evidence" is still substantial evidence (*Hasso, supra*, 227 Cal.App.4th at 119), we decline Massman's invitation to reweigh the evidence.

Massman argues for the first time on appeal that the limited partners all agreed to modify the Agreement by virtue of a 2002 letter that used a fractional interest-based example when explaining how proceeds from the sale of the building would be distributed. Although the letter was mentioned during the trial, the trial court did not permit Massman to argue that the letter *amended* the Agreement. This ruling was not

16

erroneous. The Agreement spelled out how it was to be amended, and these procedures had been followed with each of the Agreement's three formal amendments. The 2002 letter did not satisfy these procedures; at most, it established the limited partners' permission to sell the building.

## II.     Breach of Fiduciary Duty Claim

Plaintiffs are correct that general partners owe limited partners a fiduciary duty. (*Enea, supra*, 132 Cal.App.4th at p. 1564.) But, as we note above, plaintiffs' fiduciary duty claim is grounded in Massman's breach of the Agreement. Because plaintiffs' claim rests on "'an agreement between the parties [and] not an obligation imposed by law [in] the absence of any such agreement'" (*Brewer, supra*, 168 Cal.App.4th at p. 1251), it cannot stand. Massman is entitled to a directed verdict on this claim.

## DISPOSITION

For these reasons, the order sustaining the demurrer to plaintiffs' elder abuse claim is reversed. The trial court is directed to reinstate that claim and to conduct further proceedings in accordance with this opinion. In all other respects the order sustaining the demurrer is affirmed. The judgment's award of compensatory damages on the breach of contract claim is affirmed; the award of compensatory damages on the breach of fiduciary duty claim is reversed, and judgment is to be directed for Massman on that claim. The trial court's order striking the jury's award of punitive damages is affirmed. The order striking the jury's award of prejudgment interest is reversed and the trial court is directed to reinstate the jury's award. Parties are to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

HOFFSTADT, J.

We concur:

BOREN, P. J.                          CHAVEZ, J.

17