[No. H027511. Sixth Dist. Sept. 30, 2005.]

BENNY ENEA, Petitioner, v.
THE SUPERIOR COURT OF MONTEREY COUNTY, Respondent;
3-D et al., Real Parties in Interest.

## COUNSEL

Jeanine Grimmond Strong for Petitioner.

No appearance for Respondent.

Daniels, Fine, Israel & Schonobuch, Timothy Hughes; Heisler, Steward & Daniels and William B. Daniels for Real Party in Interest.

## OPINION

**RUSHING, P. J.**—Plaintiff Benny Enea brought this petition to set aside an order of respondent court summarily adjudicating his cause of action against his former partners, defendants William Daniels and Claudia Daniels, for breaches of fiduciary duties consisting primarily of renting partnership property to themselves at less than its fair market value. The trial court ruled that, as a matter of law, no such claim could be predicated on such conduct in the absence of an agreement requiring fair market rents. We hold that this was error; the fiduciary duties imposed on partners by operation of law unquestionably bar them from conferring such benefits upon themselves at the partnership's expense. Accordingly, we will direct respondent court to set aside its order and deny the motion.

### BACKGROUND

For purposes of this analysis we largely accept the historical background recited in defendants' opposition to the petition, without intending to conclude any issue of fact that may arise in further proceedings. Defendants state that in 1980, they and other family members formed a general partnership known as 3-D. The partnership's sole asset was a building that had been converted from a residence into offices. Some portion of the property— apparently the greater part—has been rented since 1981 on a month-to-month

basis by a law practice of which William Daniels is apparently the sole member.[1] From time to time the property was rented on similar arrangements to others, including defendant Claudia Daniels. Plaintiff's counsel stipulated in the court below that "the partnership agreement has as its principal purpose the ownership, leasing and sale of the only partnership assets, which is the building . . . . " He also stipulated that the partnership agreement contained no provision that the property "[would] be leased for fair market value." Defendants also assert, as the trial court ultimately found, that there was no evidence of any agreement to maximize rental profits.

In 1993, plaintiff, a client of William Daniels, purchased a one-third interest in the partnership from the latter's brother, John P. Daniels. Plaintiff testified in deposition that he sought to profit from this investment either by sale at some point to a third party, or by defendants' "just buying [him] out." In 2001, however, plaintiff questioned William Daniels about the rents being paid for the property. According to the trial court's order granting summary adjudication, their relationship " 'began to unravel' and in 2003, Plaintiff was 'dissociated' from the partnership."

On August 6, 2003, plaintiff brought this action "to determine partner's buyout price and for damages." In his second cause of action, he alleged that defendants had occupied the partnership property without a written lease since the formation of the partnership; that they had told plaintiff they were paying fair market rent to the partnership; that they had "exclusive control of the books, records, accounts, and finances of the Partnership to the exclusion of plaintiff"; and that plaintiff was informed and believed they had in fact been paying significantly less than fair rental value, "in breach of their fiduciary duty to plaintiff." In their answer, defendants denied all of these allegations except to admit that defendant Claudia Daniels had occupied a portion of the premises at one time.

Defendants moved to summarily adjudicate the second cause of action on the ground, among others, that they owed no fiduciary duty to plaintiff to pay fair market rent. As an "undisputed" fact in support of the motion, defendants asserted that they "did not have a fiduciary duty to pay fair market value rent for occupancy of" the building. The "supporting evidence" cited for this assertion was "Corporations Code Section 16404(b) and (c)."

---

[1] Defendants assert that the firm of Heisler, Stewart & Daniels, Inc., which they characterize as a "separate corporate person," was "the primary tenant of the Property." As with most of defendants' factual assertions, this statement is unaccompanied by any citation to the record. Among plaintiff's opposition papers below was a letter from William Daniels to plaintiff's counsel apparently acknowledging that the other two named members had retired some time before his decision in 1980 to move what was then his "sole practice" into the building.

The trial court granted the motion. In its initial ruling it wrote that "whether or not Defendants were paying fair market rent, there was no breach of fiduciary duty to Plaintiff." The court noted that there was no evidence of any agreement to collect market or maximum rents. "Absent such an agreement . . . , or some other evidence giving rise to a duty to pay fair market rent for the building, there can be no fiduciary duty to do so." The court cited Corporations Code section 16404, subdivision (e), which states that "[a] partner does not violate a duty or obligation under this chapter or under the partnership agreement merely because the partner's conduct furthers the partner's own interest." Defendants prepared a formal order containing a number of additional recitals.

Plaintiff filed the instant petition, and we issued an order to show cause why relief should not be granted.

DISCUSSION

■ The trial court's decision depends entirely on the determination of pure issues of law, primarily concerning the scope of the fiduciary duties imposed by law on partners and the extent to which those duties are affected, as potentially pertinent here, by Corporations Code section 16404, subdivision (e). As pure questions of law, these issues are subject to independent, de novo review on appeal. Moreover, on appeal from an order granting summary judgment, "An appellate court independently reviews the questions of law presented and whether the papers raise triable issues of fact." (*R.J. Land & Assocs. Constr. Co. v. Kiewit-Shea* (1999) 69 Cal.App.4th 416, 424 [81 Cal.Rptr.2d 615].)

Despite the numerous diversions offered by defendants, the case presents a very simple set of facts and issues. For present purposes it must be assumed that defendants in fact leased the property to themselves, or associated entities, at below-market rents. Defendants made no attempt to establish otherwise, let alone to establish the absence of triable issues of fact on the point. (See Code Civ. Proc., § 437c, subd. (c).) Therefore the sole question presented is whether defendants were categorically entitled to lease partnership property to themselves, or associated entities (or for that matter, to anyone) at less than it could yield in the open market. Remarkably, we have found no case squarely addressing this precise question.[2] We are satisfied, however, that the answer is a resounding "No."

---

[2] The most factually similar decision we have found is *Wallner v. Parry Professional Bldg., Ltd.* (1994) 22 Cal.App.4th 1446 [27 Cal.Rptr.2d 834], where the general partner of a limited partnership refused to take action against a tenant, of which she was apparently a principal, that had fallen in arrears on rents owed for premises belonging to the partnership. The appeal came up on demurrer, and the question was whether a limited partner could maintain a

■ The defining characteristic of a partnership is the combination of two or more persons to jointly conduct business. (*Holmes v. Lerner* (1999) 74 Cal.App.4th 442, 454 [88 Cal.Rptr.2d 130] ["association with the intent to carry on a business for profit"].) It is hornbook law that in forming such an arrangement the partners obligate themselves to share risks and benefits and to carry out the enterprise with the highest good faith toward one another—in short, with the loyalty and care of a fiduciary. "Partnership is a fiduciary relationship, and partners are held to the standards and duties of a trustee in their dealings with each other. ' " '[I]n all proceedings connected with the conduct of the partnership every partner is bound to act in the highest good faith to his copartner and may not obtain any advantage over him in the partnership affairs by the slightest misrepresentation, concealment, threat or adverse pressure of any kind.' [Citations.]" ' " (*BT-I v. Equitable Life Assurance Society* (1999) 75 Cal.App.4th 1406, 1410–1411 [89 Cal.Rptr.2d 811], quoting *Leff v. Gunter* (1983) 33 Cal.3d 508, 514 [189 Cal.Rptr. 377, 658 P.2d 740].) Or to put the point more succinctly, "Partnership is a fiduciary relationship, and partners may not take advantages for themselves at the expense of the partnership." (*Jones v. Wells Fargo Bank* (2003) 112 Cal.App.4th 1527, 1540 [5 Cal.Rptr.3d 835]; see *Jones v. H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 108, 111 [81 Cal.Rptr. 592, 460 P.2d 464].)

■ Here the facts as assumed by the parties and the trial court plainly depict defendants taking advantages for themselves from partnership property *at the expense of the partnership.* The advantage consisted of occupying partnership property at below-market rates, i.e., less than they would be required to pay to an independent landlord for equivalent premises. The cost to the partnership was the additional rent thereby rendered unavailable for collection from an independent tenant willing to pay the property's value.

■ Defendants' objections to this reasoning ring hollow. Their main argument appears to be that their conduct was authorized by Corporations Code section 16404 (section 16404), which codifies the fiduciary duties of a partner under California law. The implication of such an argument is that section 16404 provides the *exclusive* statement of a partner's obligation to the partnership and to other partners. This premise would be correct if California had adopted, in its proposed form, the uniform law on which section 16404 is based. Section 404 of the Uniform Partnership Act (1997 rev.), also known as the Revised Uniform Partnership Act or RUPA, contains an explicitly exclusive enumeration of a partner's duties. After noting that a partner owes fiduciary

derivative action on behalf of the partnership. In answering that question affirmatively, the court characterized the challenged conduct as "self-dealing."

duties of loyalty and care, the uniform act declares that those duties are "limited to" obligations listed there. (RUPA, § 404(b), (c).) While section 16404 retains this language with respect to the duty of care, it repudiates it with respect to the duty of loyalty, stating instead that "[a] partner's duty of loyalty to the partnership and the other partners *includes* all of the following: . . ." (Italics added.)

The leading treatise on RUPA confirms that by altering the proposed language, the California Legislature rejected one of the "fundamental" changes the drafters sought to bring to partnership law, i.e., "an exclusive statutory treatment of partners' fiduciary duties." (Hillman et al., The Revised Uniform Partnership Act (2004 ed.) p. 202 (Hillman et al.).) The proposed uniform version "[b]y its terms . . . comprises an exclusive statement of the fiduciary duties of partners among themselves and to the partnership. The formulation is exclusive in two ways; the duties of loyalty and care are the only components of the partners' fiduciary duties, and the duties themselves are exclusively defined." (*Ibid.*, fns. omitted.) But several states, *most clearly California*, balked at the latter restriction, leaving the articulation of the duty of loyalty to traditional common law processes. "Some adopting states . . . modified the RUPA language in ways which make, or arguably make, the fiduciary duty formulation non-exclusive. [Citation.] The available California legislative history states that: '[Section 16404] establishes a *comprehensive, but not exhaustive, definition* of partnership fiduciary duties. A partner owes *at least two* duties to other partners and the partnership: a duty of loyalty and a duty of care. In addition, an obligation of good faith and fair dealing is imposed on partners.' [Citation] This reading is also supported by the drafters' conclusion in the legislative history that 'the new fiduciary duty section makes no substantive change from prior law.' [Citation.]" (*Id.*, fn. 5, quoting Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 583 (1995–1996 Reg. Sess.) as amended Aug. 23, 1996, p. 6, some italics added.)

Further, even if the statutory enumeration of duties were exclusive it would not entitle defendants to rent partnership property to themselves at below-market rates. The first duty listed in the statute is "[t]o account to the partnership and hold as trustee for it *any property, profit, or benefit* derived by the partner in the conduct . . . of the partnership business or *derived from a use by the partner of partnership property* . . . ." (Corp. Code, § 16404, subd. (b)(1), italics added; see *id.*, § 16401, subd. (g) ["A partner may use or possess partnership property only on behalf of the partnership"]; see RUPA, §§ 404(b)(1), 401(g).)

Defendants persuaded the trial court that the conduct challenged by plaintiff was authorized by section 16404, subdivision (e), which states, "A partner does not violate a duty or obligation under this chapter or under the partnership agreement merely because the partner's conduct furthers the partner's own interest." The apparent purpose of this provision, which is drawn verbatim from RUPA section 404(e), is to excuse partners from accounting for incidental benefits obtained in the course of partnership activities *without detriment to the partnership.*[3] It does not by its terms authorize the kind of conduct at issue here, which did not "merely" further defendants' own interests but did so by depriving the partnership of valuable assets, i.e., the space which would otherwise have been rented at market rates. Here, the statute entitled defendants to lease partnership property *at the same rent another tenant would have paid.* It did not empower them to occupy partnership property for their own exclusive benefit at partnership expense, in effect converting partnership assets to their own and appropriating the value it would otherwise have realized as distributable profits. Defendants' argument to the contrary seems conceptually indistinguishable from a claim that if a partnership's "primary purpose" is to purchase and hold investments, individual partners may freely pilfer its office supplies.

Defendants also persuaded the trial court that they had no duty to collect market rents in the absence of a contract expressly requiring them to do so. This argument turns partnership law on its head. Nowhere does the law declare that partners owe each other only those duties they explicitly assume by contract. On the contrary, the fiduciary duties at issue here are *imposed by law*, and their breach sounds in tort. (See *Everest Investors 8 v. Whitehall Real Estate Limited Partnership XI* (2002) 100 Cal.App.4th 1102, 1104 [123 Cal.Rptr.2d 297] [one not having a fiduciary relationship with the plaintiff is "legally incapable of committing the tort" of breach of fiduciary duty]; *Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1086 [41 Cal.Rptr.2d 768]

---

[3] The authors of the above cited treatise note that this provision has received "two very different interpretations . . . , one rather narrow and the other quite broad. [¶] Under the narrow interpretation, Section 404(e) is essentially an evidentiary rule which could be paraphrased as 'the fact that a partner directly personally benefits from the partner's conduct in the partnership context does not, without more, establish a violation of the partner's duties or obligations under RUPA or the partnership agreement.' [¶] Under the broad interpretation, Section 404(e) means that partners are free to pursue their short-term, individual self-interest without notice to or the consent of the partnership, subject only to the specific restrictions contained in the Section 404(b) duty of loyalty—in effect that the pursuit of self-interest cannot be a violation of the non-fiduciary obligation of good faith and fair dealing." (Hillman et al., *supra*, at p. 207.) We need not decide which of these views, if either, prevails in California. Even under the broader reading, section 16404, subdivision (e), does not authorize a partner to exploit partnership property for personal advantage at partnership expense.

[in client's suit against attorney, "a breach of fiduciary duty is a species of tort distinct from a cause of action for professional negligence"]; *Jahn v. Brickey* (1985) 168 Cal.App.3d 399, 406 [214 Cal.Rptr. 119] [plaintiff was entitled to damages for emotional distress where he "prevailed on the tort theories of fraud and breach of fiduciary relationship" (italics omitted)].) We have no occasion here to consider the extent to which partners might effectively limit or modify those delictual duties by an explicit agreement or whether the partnership agreement in fact required market rents by its terms. There is no suggestion that it purported to affirmatively *excuse* defendants from the delictual duty not to engage in self-dealing. Instead, their argument is predicated on the wholly untenable notion that they were entitled to do so unless the agreement explicitly declared otherwise.

Defendants also assert, and the trial court found, that the "primary purpose" of the partnership was to hold the building for appreciation and eventual sale. This premise hardly justified summary adjudication. If the partners had explicitly agreed *not* to derive market rents from the property, but to let it be used for the exclusive advantage of some of them indefinitely, there would be some basis to contend that defendants were entitled to conduct themselves as they did—or at least that plaintiff was estopped to complain. But the mere anticipation of eventual capital gains as the main economic benefit to be derived from the venture has no tendency whatsoever to entitle individual partners to divert to their own advantage benefits that would otherwise flow to the partnership.

While this observation is sufficient to dispose of the point, we cannot help but note indications in the record that the falling-out between plaintiff and defendants apparently arose not only because William Daniels insisted on paying rents lower than plaintiff thought were proper, but also because he refused to sell the property until he was ready to retire from his law practice. Proof of such a dispute would highlight a direct conflict arising quite foreseeably from defendants' self-dealing. As emphasized by defendants, plaintiff testified in deposition that "he was 'looking to make a profit on the deal' either upon the sale of the Property at some point in time *or by [defendants] 'just buying [him] out.'* " (Italics added.) It is difficult to see why defendants would be in any hurry to buy plaintiff out so long as they could enjoy the property at a discounted rent. Presumably, they profited from the property every day this situation persisted, while plaintiff was deprived of any benefit whatsoever until it suited defendants to sell. By then, of course, they would have received months or years of direct financial advantage for which, according to them, they had no obligation to account to plaintiff or the

partnership. This situation put them in direct conflict with both the partnership and plaintiff *even in terms of the "primary purpose"* they so emphatically claim for the partnership.[4]

Defendants raise a host of additional objections to plaintiff's claims. The trial court cited none of these contentions as a basis for its original ruling, and indeed none of them comes close to sustaining its order. Thus defendants assert that the claims are unsound because William Daniels "was never a tenant of the Property. Rather, the separate corporate person of Heisler, Stewart & Daniels, Inc. was the primary tenant of the property . . . ." As we have noted, this assertion is not only unsupported by the record but appears disingenuous in light of the admission by William Daniels that he operated a "sole practice" in the building. (See *ante*, fn. 1.) We emphatically reject the notion that he could shrive himself of his fiduciary duties simply by running his individual business through a legally distinct entity.[5]

Defendants assail plaintiff's allegation that they falsely assured him they were collecting market rents. But even if they had succeeded in dispelling all issues of fact on this point—which they did not, at least as to William Daniels—it would not sustain the summary disposition of plaintiff's claim for breach of fiduciary duty. Proving that no misrepresentations were made would defeat a claim for *actual fraud*, and might support defenses such as estoppel, but does not negate any element of the claim for breach of fiduciary duty.

Even further from the mark is defendants' assertion that plaintiff "never insisted that the rents for the Property be increased . . . ." A partner does not waive remedies for breach of fiduciary duty merely by neglecting to demand that his partners refrain from such breaches. Again, defendants' contention may suggest an equitable defense such as estoppel, but it has no tendency to dispel triable issues of fact as to whether they breached their fiduciary duties by renting the property to themselves at below-market rates.

---

[4] Also, it is a matter of common knowledge that commercial properties are often if not always valued, at least in part, on the basis of their rental history. Decades of artificially suppressed rents could well have a tendency to reduce the price a willing buyer would be prepared, or could be persuaded, to pay. Of course the seller would explain that rents had been artificially suppressed, but at best a history of bargain rents would render the income potential less certain than it would otherwise be.

[5] This is not to suggest that the result would be different if the law practice included more than one member. At least so long as William Daniels was a member of the firm, any benefit he conferred on it at the expense of 3-D constituted self-dealing.

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its order granting defendants' motion for summary adjudication of plaintiff's second cause of action, and to enter a new order denying said motion. The temporary stay order heretofore issued is vacated. Costs to petitioner.

Mihara, J., and McAdams, J., concurred.