Filed 1/8/15 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| RENEE FERESI,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>THE LIVERY, LLC et al.,<br><br>    Defendants and Appellants. | 2d Civil No. B248607<br>(Super. Ct. No. 56-200900362200-<br>CU-CO-VTA)<br><br>ORDER MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on December 15, 2014, be modified as follows:

1.  On page 1, the first paragraph is deleted and the following paragraph is inserted in its place:

The Commercial Code[1] provides that "a financing statement must be filed to perfect all security interests . . . ."  (§ 9310, subd. (a).)  It further provides, "A perfected security interest . . . has priority over a conflicting unperfected security interest . . . ."  (§ 9322, subd. (a)(2).)  This order of priority is not immutable and in some circumstances must yield to principles of equity.  Here two parties hold security interests in the same entity.  One party perfected his security interest by breaching a fiduciary duty owed to the party whose

---

[1] All statutory references are to the Commercial Code unless stated otherwise.

security interest was unperfected. We conclude that equity compels the subordination of the perfected interest to the holder of the unperfected interest.

2. On page 2, the first sentence in the first paragraph, beginning "This dispute arises," is deleted, and the following sentence is inserted in its place: "The security interests held by the parties to this dispute attach to James Mesa's (Mesa) membership share in The Livery, LLC (the LLC)."

3. On page 2, the second paragraph, beginning "The LLC and Harley appeal," is deleted and the following paragraph is inserted in its place:

> The LLC and Hartley appeal the trial court's judgment in favor of Feresi. Hartley contends his perfected security interest in Mesa's ownership share of the LLC has statutory priority over Feresi's preexisting but unperfected security interest. Feresi contends Hartley's security interest is invalid because he created the priority of his interest by breaching the fiduciary duty of good faith and fair dealing that he owed to her as a member of the LLC.

4. On page 3, in the first full paragraph, add the words "and other creditors" to the end of the first sentence, so that the sentence reads: "By 2008, Mesa was struggling financially and fell behind on his obligations to Feresi and other creditors."

5. On page 3, in line 4 of the first full paragraph, the word "he" is changed to "Hartley" so that the sentence reads: "Although Hartley knew Mesa's membership share in the LLC secured his financial obligations to Feresi, Hartley nevertheless secured the loan from his pension plan by the same 12.5 percent membership share Mesa pledged to Feresi in 2006."

6. On page 6, the first heading titled "Hartley's Business Relationship with Feresi as a Fiduciary" is changed to "Hartley's Duties as a Fiduciary."

7. On page 6, the following paragraph is inserted as the second full paragraph under the (new) heading *Hartley's Duties as a Fiduciary*:

> The animating principle of a fiduciary's duties to his charges is unfaltering loyalty and honesty. "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties.

A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions [citation]. Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd." (*Meinhard v. Salmon* (1928) 249 N.Y. 458, 464.)

8. On page 7, in the first full paragraph beginning "Feresi had no reason to protect," the following sentence is added before the last sentence: "The primacy of Hartley's security interest in Mesa's share of the LLC must succumb to the infection of his duplicity and silence."

Also, in the same paragraph, the words "Under these circumstances" are deleted, so that the last sentence reads: "The trial court properly refused to enforce the security interest held by Hartley's pension plan."

9. On page 7, the heading titled "The Commercial Code (UCC) Filing Scheme" is changed to "Equitable Subordination."

10. On page 8, the following two paragraphs are added after the first paragraph ending "(*Knox*, *supra*, at pp. 1364-1365.)":

We conclude that if a fiduciary engages in inequitable conduct with respect to a person to whom a fiduciary duty is owed, then its claim, lien or security interest may be wholly or partially subordinated. The doctrine of equitable subordination has deep common law roots and is based upon the inherent power of a court of equity to do justice as circumstances dictate. While the doctrine is most frequently asserted in bankruptcy court because it has statutory support in section 510 of the Bankruptcy Code, it has also been employed, though sparingly, in other contexts. (See, for example, *General Ins. Co. v. Lowry* (1978) 570 F.2d 120.)

3

As the *Knox* court observed, equity and thus equitable subordination should be invoked with caution by the courts. But where, as here, a petitioner has shown: (1) the fiduciary engaged in inequitable conduct; (2) the misconduct resulted in injury to the petitioner or conferred an unfair advantage on the fiduciary; and, (3) invocation of the remedy of equitable subordination will not be inconsistent with the Commercial Code, then the remedy has a place.

11. On page 8, the first two full paragraphs are deleted, and the following paragraph is inserted in its place:

The UCC itself acknowledges that its provisions are to be supplemented by "principles of law and equity." (§ 1103, subd. (b).) The UCC filing system provides a mechanism for creditors to establish the priority of security interests they secure from debtors and allows them to determine if others already have a claim on collateral. It sets the priority of valid security interests in the same collateral through a registration system. The statutory scheme is not intended to provide a vehicle for creditors to take advantage of persons with whom they have a fiduciary relationship. The application of equitable principles in this case strengthens the statutory scheme. Not rewarding the product of sharp practices in the creation of a security interest lends stability and security in commercial transactions among fiduciaries.

There is no change in the judgment.

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| RENEE FERESI,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>THE LIVERY, LLC et al.,<br><br>    Defendants and Appellants. | 2d Civil No. B248607<br>(Super. Ct. No. 56-200900362200-<br>CU-CO-VTA)<br>(Ventura County) |

The Commercial Code[2] provides that "a financing statement must be filed to perfect all security interests . . . ."  (§ 9310, subd. (a).)  It further provides, "A perfected security interest . . . has priority over a conflicting unperfected security interest . . . ."  (§ 9322, subd. (a)(2).)  Although the code reflects the Legislature's intention to create a simplified, clear and uniform means of prioritizing security interests, there are circumstances when the letter of the law yields to the principles of equity and the spirit of justice.  (See § 1103, subds. (a), (b).)  Here we hold that if a perfected security interest is created by breaching a fiduciary duty owed to another person, then equitable principles may be applied to give priority to an earlier unperfected security interest.

---

[2] All statutory references are to the Commercial Code unless stated otherwise.

This dispute arises from conflicting security interests held by two persons in James Mesa's (Mesa) membership share in The Livery, LLC (the LLC). The competing claimants are Mesa's former wife, Renee Feresi (Feresi) whose unperfected security interest was created in 2006, and Mark Hartley as Trustee of the Fitzgerald-Hartley Pension Plan (Hartley) whose perfected security interest was created in 2008. Hartley is the president and managing member of the LLC.

The LLC and Hartley appeal the trial court's judgment. Hartley contends his perfected security interest in Mesa's ownership share of the LLC has statutory priority over Feresi's preexisting but unperfected security interest. Feresi contends Hartley's security interest is invalid because Hartley breached a fiduciary duty of good faith and fair dealing that Hartley owed to her. Feresi contends Hartley surreptitiously created and perfected a security interest in collateral he knew had been earlier pledged by Mesa to secure his financial obligations to her.

We modify the judgment to strike the references to "Mark Hartley, individually" and affirm the judgment as modified.

PROCEDURAL HISTORY AND FACTS

Feresi and Mesa married in 1995 and separated in 2002. During their marriage, the couple acquired a 25 percent interest in the LLC. The LLC began with four investors who owned equal shares. Hartley's family trust was an investor and he served as the LLC's president and managing member.

In May 2006, the court entered a judgment dissolving the marriage of Feresi and Mesa. The judgment incorporated the terms of a Marital Settlement Agreement (MSA) that awarded Feresi one-half of the community's interest in the LLC. Mesa was also required to make the monthly payments on Feresi's home mortgage and to pay it off within five years. Mesa's financial obligations to Feresi were secured by Mesa's interest in the LLC and other properties.

Feresi did not file a Uniform Commercial Code Financing Statement (UCC-1 financing statement) to "perfect" her security interest in Mesa's share of the LLC. She instead gave Hartley and the other members of the LLC written notice that

2

the dissolution judgment awards her one-half of Mesa's share of the LLC and that Mesa pledged his retained share as security for his financial obligations to her. Amendments to the books and records of the LLC showed Feresi as a member with a 12.5 percent ownership interest. Corporate tax returns identify Feresi as an LLC member.

By 2008, Mesa was struggling financially and fell behind on his obligations to Feresi. On October 7, 2008, Hartley made a short-term loan to Mesa of $200,000 from the Fitzgerald-Hartley Pension Plan. Although Hartley knew Mesa's membership share in the LLC secured his financial obligations to Feresi, he nevertheless secured the loan from his pension plan by the same 12.5 percent membership share Mesa pledged to Feresi in 2006. Hartley did not disclose to Feresi either that his pension plan intended to loan money to Mesa or that it would be secured by Mesa's membership share.

On October 30, 2008, Feresi notified Hartley as president and manager of the LLC that she intended to enforce Mesa's obligations to her by taking the 12.5 percent share of the LLC and certain other properties he pledged. To this end, Feresi filed an Order to Show Cause (OSC) in the family law proceedings to compel Mesa to convey his 12.5 percent membership share in the LLC to her. While the OSC was pending, on November 12, 2008, Feresi filed a quiet title action against Mesa and the LLC to foreclose the "judicial liens" created by the MSA and dissolution judgment, and to obtain quiet title to Mesa's 12.5 percent membership share.[3]

After he was notified of Mesa's failure to meet his obligations to Feresi and of her OSC and quiet title action, Hartley determined that Feresi had not filed a UCC-1 financing statement to perfect her security interest in Mesa's membership share of the LLC. Hartley took advantage of this circumstance to acquire priority for his

---

[3] On November 28, 2011, a judgment was entered in the quiet title action against Mesa and The Livery LLC that quieted title in Feresi to a 25 percent interest in the LLC. This judgment was served on Hartley as president and manager of the LLC. Neither Mesa nor the LLC appealed that judgment.

own, conflicting security interest in the same membership share by filing a UCC-1 financing statement reflecting the loan made by his pension plan to Mesa.

On January 22, 2009, a "judgment" was entered on Feresi's OSC, ordering Mesa to "assign, convey and transfer" his remaining 12.5 percent interest in the LLC to Feresi. Mesa complied with that order on January 26, 2009. On the same day, Feresi notified Hartley and the other LLC members that Mesa's transfer was complete and that the LLC's records should be amended to identify her as the owner of a 25 percent membership interest.

On October 7, 2009, Mesa failed to repay the loan from Hartley's pension plan. On November 12, 2009, the pension plan published a "Notice of Disposition" announcing that Mesa's 12.5 percent membership interest in the LLC would be sold on November 23 to satisfy the debt. On November 19, 2009, Feresi filed this action for declaratory and injunctive relief.

After a trial in November 2012, the court issued its statement of decision and factually found: "[B]y 2007, Renee Feresi [was] recognized as a member of The Livery, LLC and [was] designated as a 12.5 [percent] member on The Livery LLC [corporate tax] returns for 2007." It also found that, when Hartley and Mesa perfected the security interest of Hartley's pension plan in Mesa's share of the LLC, Hartley had actual notice of Feresi's prior security interest, knew Mesa was in default on his obligations to Feresi, knew she was entitled to enforce her security interest by taking Mesa's share of the LLC, and knew that she had filed the OSC and quiet title action to do so. It also concluded that, once Hartley learned in October 2009 that Mesa had transferred his 12.5 percent membership interest to Feresi, Hartley was obligated to insure that the LLC's corporate records showed Feresi was the exclusive owner of a 25 percent membership interest in the LLC.

The trial court ruled that Hartley breached a fiduciary duty owed to Feresi and that the security interest created by Mesa and Hartley in October 2008 in favor of Hartley's pension plan was "null and void." The trial court declared that Feresi has a 25 percent membership interest in the LLC that is not encumbered by the

4

claims of Hartley or his pension plan. Hartley, Hartley's family trust and his pension plan were enjoined from attempting to enforce their security interest in Mesa's share of the LLC.

## DISCUSSION

### *Standard of Review*

The trial court's decision involves mixed questions of law and fact. The court's findings of fact, primarily about what Hartley knew and when he knew it, will be affirmed if they are supported by substantial evidence. When a party makes a claim of insufficiency of the evidence we begin with the presumption the judgment is correct. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) We may not reweigh or resolve conflicts in the evidence or redetermine the credibility of witnesses. (*Citizens Business Bank v. Gevorgian* (2013) 218 Cal.App.4th 602, 613.) We liberally construe the court's findings of facts, whether express or implied. (*Ibid*.) The testimony of a single witness may be sufficient. (*Ibid*.; Evid. Code, § 411.) To the extent the court's decision depends on the determination of pure issues of law, primarily concerning the scope of the fiduciary duties imposed by law on partners and the remedies in the event of a breach, the issues are subject to our de novo review on appeal.

Despite the diversions offered by Hartley, this case presents a relatively simple set of facts and issues. If the trial court's factual findings are supported by substantial evidence, then the question presented is whether Hartley is categorically entitled to claim priority for the security interest in favor of his pension plan even if it extinguishes the preexisting security interest of his co-member Feresi by breaching a fiduciary duty he owes to her. We are satisfied the answer to that question is "No."

### *Feresi Has Been a Member of the LLC Since 2006.*

First, we disagree with Hartley's contention that Feresi was not a member of the LLC and was therefore not a person to whom he owed a duty of good faith and fair dealing. The trial court concluded otherwise and substantial evidence supports that conclusion. Feresi and her counsel repeatedly gave oral and written

5

notice to Hartley and the LLC that the MSA and judgment awarded Feresi a 12.5 percent membership share in the LLC and that Mesa had pledged his remaining 12.5 percent membership share as security for his financial obligations to Feresi. Hartley and the other LLC members acknowledged Feresi was also a member by, for example, identifying her as a member on the LLC's tax returns.

*Hartley's Business Relationship with Feresi as a Fiduciary.*

The manager of an LLC has a fiduciary duty and owes to the members of the LLC the same duties of loyalty and good faith as a partner owes to the partnership and its partners. (§ 3307; Corp. Code, former § 17153, repealed by Stats. 2012, now § 17704.09.) Thus, Hartley is obligated to act with the utmost loyalty and in the highest good faith when dealing with any member of the LLC, including Feresi. He may not obtain any advantage over Feresi (or any other member of the LLC) by even the slightest misrepresentation or concealment. (*Enea v. Superior Court* (2005) 132 Cal.App.4th 1559, 1564; *Yeomans v. Lysfjord* (1958) 162 Cal.App.2d 357, 361-362.)

*Hartley Breached the Duty of Good Faith and Fair Dealing He Owed to Feresi.*

Substantial evidence supports the trial court's conclusion that Hartley breached his fiduciary duty to Feresi by destroying the value of her security interest in Mesa's ownership share in the LLC to advance his own. Hartley had actual knowledge of Feresi's security interest in Mesa's LLC membership, knew that Mesa was in default on his obligations to Feresi and knew that Feresi's security interest was immediately enforceable. Hartley loaned money to Mesa, created a conflicting security interest in Mesa's membership share and then surreptitiously perfected it to gain an advantage over Feresi.

We reject Hartley's contention that filing of the UCC-1 financing statement was not a breach of his fiduciary duties because, "A partner does not violate a duty or obligation under this chapter or under the partnership agreement merely because the partner's conduct furthers the partner's own interest." (§ 16404, subd. (e).) "The apparent purpose of this provision . . . is to excuse partners from accounting for incidental benefits obtained in the course of partnership activities *without detriment to*

6

*the partnership*. [Fn. omitted.]" (*Enea v. Superior Court*, *supra*, 132 Cal.App.4th at p. 1566.) Hartley is not entitled to disregard his actual knowledge of Feresi's preexisting security interest in the same property and perfect his security interest at her expense. Hartley's filing of the UCC-1 financing statement was not without detriment to his partner, Feresi. It rendered her security interest worthless. Section 16404, subdivision (e) has no application under these circumstances.

Feresi had no reason to protect the priority of her own security interest in the same property because she was unaware that her partner held a conflicting interest. Hartley took advantage of Feresi's ignorance by concealing this from her, and betrayed her trust and confidence by perfecting his pension plan's security interest ahead of hers. In doing so, Hartley breached the fiduciary duties of loyalty and good faith he owed to Feresi. Under these circumstances, the trial court properly refused to enforce the security interest held by Hartley's pension plan.

*The Commercial Code (UCC) Filing Scheme*

Hartley contends the UCC sets a "hard line" that requires courts to disregard the equities and accept "harsh results" to ensure that commercial transactions are simple, clear and uniform. Citing *Knox v. Phoenix Leasing, Inc.* (1994) 29 Cal.App.4th 1357, 1368, Hartley observes that the statutory priority given to the holder of a perfected security interest must be upheld even if the holder is unjustly enriched at the expense of an unsecured creditor. In *Knox*, the perfected security interest attached to all equipment owned or later acquired by a winery. The winery's obligation to the seller of the equipment was unsecured. The *Knox* court acknowledged the harsh result of finding the perfected interest had priority over that of the seller, but said it had to be accepted to ensure "a predictable system of creditor priorities." (*Id.*, at p. 1361.) Even so, the *Knox* court cautioned that, "[V]ictory for a secured creditor is not an immutable law of nature. Fraud, for example, is expressly put beyond the pale. [Citation.] A code may strive for comprehensiveness, but exceptional situations will arise. Equity is ordinarily meant to operate in these situations [citations], but its operation is subject to the principle that 'equity follows the law.' [Citation.] This deference requires that

7

equitable exceptions to statutory law be carefully limited to reduce any possible conflict with an express statutory command." (*Knox*, *supra*, at pp. 1364-1365.)

The UCC itself acknowledges that its provisions are to be supplemented by "principles of law and equity." (§ 1103, subd. (b).) We do not believe the Legislature intended to confer a benefit to a person who files a UCC-1 financing statement in violation of a fiduciary duty. The Legislature's interest in simple, clear, and uniform prioritization of security interests does not condone such an outcome. The exceptional situation contemplated by *Knox* is found here. The application of equitable principles in this case strengthens the statutory scheme. Not rewarding the product of sharp practices in the creation of a security interest lends stability and security in commercial transactions among fiduciaries.

The UCC filing system provides a mechanism for creditors to establish the priority of security interests they secure from debtors and allows them to determine if others already have a claim on collateral. It sets the priority of valid security interests in the same collateral through a filing system. The statutory scheme is not intended to provide a vehicle for creditors to take advantage of persons with whom they have a fiduciary relationship. Thus, in this case, it is not determinative that Hartley perfected his pension plan's security interest in Mesa's membership share by filing a UCC-1 financing statement.

*Modification of the Judgment*

The judgment entered on March 25, 2013 declares that it is "in favor of Plaintiff Renee Feresi and against The Livery, LLC and *Mark Hartley, individually* and as Trustee of the Fitzgerald-Hartley Pension Plan." It also declares that "Renee Feresi owns the [25 percent interest] in The Livery, LLC free and clear of any interest asserted *by Mark Hartley*, or the Fitzgerald-Hartley Pension Plan to that interest."

Mark Hartley was named individually as a defendant but the court sustained his demurrer and the case was dismissed as to him individually. The provisions of the judgment that are specific to him other than in his representative capacity must be stricken.

8

DISPOSITION

The Clerk of the Superior Court is instructed to strike the provisions in the judgment found on page two, line 10 and lines 15 to 16 that refer to "Mark Hartley, individually."  The judgment, as modified, is affirmed.  Respondent is awarded her costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>

BURKE, J.[*]

We concur:

GILBERT, P. J.

YEGAN, J.

---

[*] (Judge of the Superior Court of San Luis Obispo County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)

Charles R. McGrath, Judge

Superior Court County of Ventura
_____


Goldenring & Prosser, Peter A. Goldenring and James E. Prosser for Defendants and Appellants.

Law Offices of William Crockett, William E. Crockett and Kenneth C. Bounds for Plaintiff and Respondent.