Filed 5/19/22  Marriage of Conner CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

In re the Marriage of RYAN ALLAN and LAYKEN MARIE CONNER.

RYAN ALLAN CONNER,

    Respondent,

    v.

LAYKEN MARIE CONNER,

    Appellant.

D079248

(Super. Ct. No. DN187140)

APPEAL from an order of the Superior Court of San Diego County, Matthew Brower, Judge.  Affirmed as modified.

Patrick L. McCrary for Appellant.

Cage & Miles and John T. Sylvester for Respondent.

Layken Marie Conner appeals an order granting the request of her ex-husband Ryan Allan Connor to move their daughter from California to Delaware.  Layken challenges the family court's exclusion of certain evidence, its weighing of factors relevant to the decision on the move-away request, its

order that she pay the travel costs of visitation, and its cession of jurisdiction to the Delaware courts. We modify the move-away order by striking the portion ceding jurisdiction and affirm the order as modified.

## I.

## BACKGROUND

Ryan and Layken married in 2009 and have one child, who was born in 2015. A stipulated judgment dissolving the marriage was entered in 2016. Ryan and Layken stipulated to joint legal and joint physical custody of the child and alternated physical custody each week.

In the autumn of 2020, Ryan relocated with his new wife and children to Delaware to care for his mother, who had been diagnosed with serious illnesses and could no longer care for herself. Ryan filed a request for order that the child move to Delaware and live with him. Ryan and Layken participated in a Family Court Services (FCS) conference, and the FCS counselor prepared a report recommending they share joint legal custody and that the child reside primarily with Layken. Before the hearing on the request for the move-away order, Ryan filed a motion in limine to exclude the FCS counselor's report as hearsay and Layken filed opposition. Layken also filed a responsive declaration to Ryan's request for order stating she did not consent to the move-away.

The hearing on the move-away request began in March 2021. The family court denied as untimely Ryan's motion to exclude the FCS counselor's report. On three different days over the following six weeks, the court heard testimony from Ryan, his wife, Layken, her cousin, and her mother. On the last day of the hearing, the parties' counsel and the court discussed the admissibility of photographs of Layken's home and of the FCS counselor's report and the need to call the counselor as a witness if the report was not

2

going to be admitted in evidence. The court refused to admit the photographs because Layken had not served them on Ryan before the hearing began. As to the FCS counselor's report and testimony, Layken's counsel argued the report should be admitted in evidence, but acknowledged Ryan's counsel had objected and stated that "if the Court [was] not going to admit the . . . report, then [she] need[ed] a second date to be able to call the [FCS counselor]." When Ryan's counsel objected the report was inadmissible hearsay, the court stated it would not admit the report over his objection and would continue the hearing to a date in August to allow the counselor to testify. Wanting to finish the hearing that day, Ryan's counsel agreed to admit only the recommendations portion of the FCS counselor's report. With that limited admission Layken's counsel stated she would still need to call the counselor as a witness, and the court responded "that's likely going to be denied." After further discussions, during which Ryan's counsel stated the report should not be admitted in its entirety and the court reminded him that would require a further hearing date in August, counsel withdrew the objection and the entire report was admitted. Layken's counsel never made an offer of proof regarding the FCS counselor's testimony and later rested her case without calling the counselor as a witness.

The family court heard closing arguments from counsel and then announced its decision. The court discussed the general factors concerning the best interest of the child specified in Family Code section 3011[1] and the

---

[1]     These factors include: (1) "[t]he health, safety, and welfare of the child"; (2) "[a] history of abuse by one parent"; (3) "[t]he nature and amount of contact with both parents"; and (4) "[t]he habitual or continual illegal use of controlled substances, the habitual or continual abuse of alcohol, or the habitual or continual abuse of prescribed controlled substances by either parent." (Fam. Code, § 3011, subd. (a).)

factors specific to move-away requests set out in *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072 (*LaMusga*)[2] and *In re Marriage of Burgess* (1996) 13 Cal.4th 25 (*Burgess*).[3] The court stated there were no problems with domestic violence or substance abuse; both parents loved the child, had equal amounts of custody, and put her best interests above their own; and her health, safety, and welfare would be assured whoever was awarded custody. As factors in support of granting the move-away request, the court noted that Ryan moved to Delaware to care for his ailing mother, not for an ulterior motive; Ryan had been primarily responsible for the child's medical care; and the move would provide greater stability to the child by allowing her to maintain the strong relationships with Ryan, her half-sister, stepmother, and stepbrother, and also would allow her to build relationships with Ryan's extended family in Delaware, Maryland, and Pennsylvania. The court

---

[2]  "Among the factors that the court ordinarily should consider when deciding whether to modify a custody order in light of the custodial parent's proposal to change the residence of the child are the following: the children's interest in stability and continuity in the custodial arrangement; the distance of the move; the age of the children; the children's relationship with both parents; the relationship between the parents including, but not limited to, their ability to communicate and cooperate effectively and their willingness to put the interests of the children above their individual interests; the wishes of the children if they are mature enough for such an inquiry to be appropriate; the reasons for the proposed move; and the extent to which the parents currently are sharing custody." (*LaMusga*, *supra*, 32 Cal.4th at p. 1101.)

[3]  "[T]he trial court, in assessing 'prejudice' to the child's welfare as a result of relocating . . . may take into consideration the nature of the child's existing contact with both parents—including de facto as well as de jure custody arrangements—and the child's age, community ties, and health and educational needs. Where appropriate, it must also take into account the preferences of the child." (*Burgess*, *supra*, 13 Cal.4th at p. 39.)

granted Ryan's move-away request and awarded him physical custody of the child; maintained joint legal custody; set a visitation schedule; ordered Layken to arrange air travel for visitation; and, over her objection, ceded jurisdiction to Delaware upon Ryan's registration of the move-away order in the appropriate court there. The court later issued a written order containing the above findings and rulings.

Layken appealed the move-away order and petitioned this court for a writ of supersedeas to stay enforcement of the order while her appeal was pending. We granted the petition in part by staying enforcement of the portion of the order ceding jurisdiction to the courts of Delaware.

## II.

## DISCUSSION

Layken claims the family court erred by: (1) denying her request to have the FCS counselor testify; (2) excluding from evidence the photographs of her home; (3) improperly emphasizing the reasons for Ryan's move to Delaware in its decision to grant the move-away request; (4) requiring her to bear the costs of the child's travel without evidence of her ability to pay the costs; and (5) ceding jurisdiction to the Delaware courts. For the reasons set out below, we reject all but the last claim of error and modify the move-away order to strike the portion ceding jurisdiction.

A.    *Testimony of FCS Counselor*

Layken's primary argument for reversal is the family court prejudicially erred by denying her request to call the FCS counselor as a witness. Layken contends she should have been allowed to call the counselor because she served a subpoena on the counselor after Ryan tried to exclude

5

the counselor's report;[4] the counselor's testimony became more important after Ryan and his counsel criticized the report during the hearing; and Layken had a due process right to present the testimony of the counselor, who was an independent investigator. Among other points, Ryan responds Layken waived her right to call the FCS counselor as a witness and invited the error of which she complains by agreeing to accept the counselor's report in lieu of testimony, and she has not shown prejudice because she failed to make an offer of proof on the counselor's expected testimony. We agree with Ryan.

When an FCS counselor has submitted a report with recommendations to the family court in a child custody dispute, both parties have a due process right to call and examine the counselor about the report. (*In re Marriage of Gayden* (1991) 229 Cal.App.3d 1510, 1521, fn. 8; *In re Marriage of Rosson* (1986) 178 Cal.App.3d 1094, 1105 (*Rosson*); *McLaughlin v. Superior Court* (1983) 140 Cal.App.3d 473, 481-483.) The parties may waive this right (*Ohmer v. Superior Court* (1983) 148 Cal.App.3d 661, 669; *McLaughlin*, at p. 483), as Layken did in this case. On the last day of the hearing on Ryan's move-away request, Layken's counsel noted Ryan's hearsay objection to admissibility of the FCS counselor's report and stated, "[I]f the Court is not

---

[4] Ryan contends Layken did not comply with local court rules in serving the subpoena on the FCS counselor and faults her for not including in the record on appeal the objections the counselor served. He asks us to take judicial notice of the objections as "official acts by a state government." (See Evid. Code, § 452, subd. (c).) Because we reject Layken's claim of error related to the FCS counselor's testimony on other grounds, we need not, and do not, decide whether Layken properly served the subpoena, and we therefore deny Ryan's motion for judicial notice. (See, e.g., *Atempa v. Pedrazzani* (2018) 27 Cal.App.5th 809, 819 ["because the proffered documents are not 'necessary, helpful, or relevant' to the resolution of the appeal, [the] motion for judicial notice of these documents is denied"].)

going to admit the . . . report, then I need a second date to be able to call the [counselor]." After further discussions among the court and counsel about the need for another hearing date in August, Ryan's counsel expressed his wish to finish the hearing that day and agreed to admit the recommendations in the report, but not the rest of it. Layken's counsel said with such a limited admission she would "still need to call the [counselor]." The court responded "that's likely going to be denied." More discussions followed, and when the court made it clear a hearing date in August would be required if Ryan did not agree to admit the entire report in evidence, Ryan's counsel withdrew the objection and the court admitted the report. Layken's counsel never mentioned calling the FCS counselor as a witness after that and rested her case without doing so. On this record, it clearly appears Layken wanted to call the FCS counselor as a witness only if the family court did not admit the report in evidence, and once the court admitted the report she was satisfied and made no further effort to call the counselor. Having "expressly or impliedly agree[d] at trial to the ruling or procedure objected to on appeal," Layken waived her right to attack it on appeal. (*Redevelopment Agency v. City of Berkeley* (1978) 80 Cal.App.3d 158, 166; accord, *In re N.S.* (2020) 55 Cal.App.5th 816, 840 (*N.S.*).)

Layken insists she did not waive her right to call the FCS counselor as a witness or invite any error in the denial of her request to call the counselor. She contends she made the offer to admit the report without calling the counselor *before* the family court had ruled on Ryan's objections to the admissibility of the report or the propriety of the subpoena, but Ryan did not accept the offer until *after* the court had indicated that if the report were not admitted another hearing date would be required in August to allow the counselor to testify. Layken further contends she did not need to continue to

7

request that the counselor testify after the discussions on admissibility of the report and the need for testimony, because during the discussions the court said it would "likely" deny her request. We find these contentions unpersuasive.

Layken's self-described "offer" to forgo calling the FCS counselor as a witness if the report were admitted in evidence was not made contingent upon its acceptance before the court made any rulings on the matter, and nothing in the record indicates Layken revoked the offer before Ryan accepted it. Rather, Ryan's counsel accepted the offer after further negotiations among counsel and the court, by withdrawing his objection to admissibility of the report minutes after the offer had been made. (See Civ. Code, § 1587, subd. (b) [when no time for acceptance is prescribed, offer is revoked if offeree does not accept in reasonable time]; *Coats & Williamson, Inc. v. Moran & Co.* (1924) 67 Cal.App. 46, 50 ["acceptance must be made within a reasonable time"].) After Ryan's counsel withdrew his objection, the court admitted the FCS counselor's report, did not set an additional hearing date for the counselor to testify, and went on to finish the hearing that day. If Layken still wanted the counselor to testify, she should have said so. By failing to speak up, she acquiesced to what happened and waived her right to challenge it on appeal. (*N.S.*, *supra*, 55 Cal.App.5th at p. 840; see *Porterville Citizens for Responsible Hillside Development v. City of Porterville* (2007) 157 Cal.App.4th 885, 912 [unfair to trial court and adverse party to try to take advantage on appeal of alleged error or omission that could have been but was not brought to court's attention in first instance].)

Even if we assume the family court erred by not allowing the FCS counselor to testify and Layken preserved the claim of error, we would reject the claim because Layken has not established the prejudice necessary to

obtain reversal of the move-away order. An order may not be set aside on the ground of erroneous exclusion of evidence "unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13; accord, Evid. Code, § 354.) Layken concedes in her briefing that "[t]here was sufficient evidence to support the order of the court," but contends that by not allowing the counselor to testify, the court "made its decision without considering all of the relevant and available evidence to determine the best interest of [the child]." We agree with Layken and the cases she cites for the proposition an independent evaluator can provide important and useful information to a court deciding a child custody dispute. (See, e.g., *Fewel v. Fewel* (1943) 23 Cal.2d 431, 435-436; *Rosson, supra*, 178 Cal.App.3d at p. 1104.) In this case, such information was provided to the family court when it admitted the FCS counselor's report, which included a recommendation Layken be given custody of the child and the reasons why the counselor thought that the custody order would be in the child's best interest. We presume the counselor would have testified consistently with the report had she been called as a witness at the hearing. Layken did not make an offer of proof to the family court that the counselor would have provided additional or different information, and in her appellate briefing she neither specifies any such information nor explains how its presentation likely would have changed the result of the move-away hearing. At oral argument, Layken's counsel conceded he did not know what the counselor's testimony would have been had the counselor been called as a witness. Layken thus has not shown it was reversible error not to allow the FCS counselor to testify. (Evid. Code, § 354, subd. (a) [order may not be reversed on ground of erroneous exclusion of evidence unless nature of evidence was

9

made known to court]; *Bell v. Mason* (2011) 194 Cal.App.4th 1102, 1107 (*Bell*) [erroneous exclusion of evidence requires reversal only if reasonably probable appellant would have obtained more favorable result had evidence been admitted]; *Back v. Farnsworth* (1938) 25 Cal.App.2d 212, 220 [exclusion of cumulative evidence was harmless].)

B.    *Photographs of Layken's Home*

Layken contends the family court committed a second evidentiary error when it excluded photographs of her home on the ground they had not been timely given to Ryan.  She argues the requirement that papers in opposition to a motion be filed and served at least nine days before the hearing (Code Civ. Proc., § 1005, subd. (b); see Fam. Code, § 210 [rules of civil procedure generally apply in family law cases]) does not apply to the exchange of exhibits to be used at trial or as rebuttal evidence.  Ryan responds the photographs were correctly excluded from evidence because they were not timely served and were not proper rebuttal evidence and because Layken has shown no prejudice from their exclusion.  We agree with Ryan on the prejudice point and thus need not, and do not, decide the timeliness point.

As noted in part II.A., *ante*, we may not reverse the move-away order based on erroneous exclusion of evidence unless Layken shows a reasonable probability of a more favorable outcome had the evidence been admitted. (Cal. Const., art. VI, § 13; Evid. Code, § 354; *Bell*, *supra*, 194 Cal.App.4th at p. 1107.)  Even if we assume, without deciding, the family court erred by excluding the photographs, Layken has not shown the error was prejudicial. She contends she sought to introduce the photographs "in rebuttal and impeachment of evidence presented by Ryan," but she does not cite to or even describe that evidence in her opening brief so that we might determine whether the photographs would have impeached or rebutted it.  " ' "The

reviewing court is not required to make an independent, unassisted study of the record in search of error . . . ." [Citations.] It is the duty of counsel to refer the reviewing court to the portion of the record which supports appellant's contentions on appeal. [Citation.] If no citation "is furnished on a particular point, the court may treat it as waived." ' " (*Sakaguchi v. Sakaguchi* (2009) 173 Cal.App.4th 852, 862.) In any event, the relative quality of Layken's and Ryan's homes was not a factor in the family court's decision to grant the move-away request. The court found "[b]oth parents have the ability to prepare and provide and to maintain the health, safety, and welfare of [the child]. [The child]'s health, safety, and welfare is going to be ensured either way." It does not appear admission of the photographs likely would have persuaded the court to make a different decision.

C.    *Reasons for Move*

Layken complains the family court placed improper emphasis on the uncontested good-faith nature of the reasons for Ryan's move to Delaware and improperly weighed the reasons against other factors identified by statute and case law as pertinent to move-away requests. (See fns. 1-3, *ante*.) This complaint has no merit.

The Supreme Court of California has identified "the reasons for the proposed move" as one of the factors courts should consider when ruling on move-away requests. (*LaMusga*, *supra*, 32 Cal.4th at p. 1101.) The factor is especially relevant if a parent's reason for the move is to lessen the child's contact with the other parent. (*Id.* at p. 1100; *F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 23.) "[S]uch bad faith conduct may be relevant to a determination of what permanent custody arrangement is in the minor children's best interest." (*Burgess*, *supra*, 13 Cal.4th at p. 36, fn. 6.) The family court in this case found Ryan needed to move to care for his ailing

11

mother and had no ulterior motive for the move, and Layken's counsel agreed with the finding. The court thus properly could conclude there was no bad faith in the reasons for the move that would cause that factor to weigh against granting the move-away request.

The court did not give undue weight to the reasons-for-the-move factor. What weight to assign each factor relevant to a move-away request is within the family court's discretion, and we must give great deference to its assessment. (*LaMusga, supra*, 32 Cal.4th at p. 1093; *In re Marriage of Condon* (1998) 62 Cal.App.4th 533, 549.) When the court announced its decision at the end of the hearing, its discussion of the reasons for the move took up a little more than one of the 14 pages of transcript devoted to the decision. Of the approximately three pages of the court's subsequent written order that discuss the factors relevant to the move-away request, seven lines are devoted to the reasons for Ryan's move. The transcript and order thus show the court considered the relevant factors and gave no undue emphasis to the reasons for the move. Layken "does not argue that the [family] court abused its discretion making it[s] decision based upon the evidence that was before the court," and she concedes the court "did not fail to consider the best interest of the child." Hence, because the family court reasonably could have concluded granting Ryan's move-away request would be in the best interest of the child, we must uphold that ruling. (*Burgess, supra*, 13 Cal.4th at p. 32.)

D.     *Visitation Travel Costs*

Layken next complains the family court erred by ordering her to pay the travel costs for the child's visits to California without evidence of her ability to pay. Layken, however, did not object on this ground when the family court announced its ruling at the end of the hearing on the move-away request. Nor did she file an objection to the written order the court issued

12

later.  " 'An appellate court will ordinarily not consider procedural defects or erroneous rulings . . . where an objection could have been, but was not, presented to the lower court by some appropriate method.  [Citations.]' [Citation.]  Failure to object to the ruling or proceeding is the most obvious type of implied waiver.  [Citation.]  Accordingly, [Layken] is foreclosed from challenging the [ruling on visitation travel costs] on appeal." (*In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, 1002; accord, *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 826; *In re Marriage of Nelson* (2006) 139 Cal.App.4th 1546, 1558.)

E.  *Cession of Jurisdiction*

Layken's last challenge is to the family court's cession of jurisdiction to the courts of Delaware.  She contends the court could not cede jurisdiction without first hearing from the parties and making findings on the factors listed in Family Code section 3427, subdivision (b),[5] a provision of the

---

[5]  A California court with jurisdiction to make a child custody determination "may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum.  The issue of inconvenient forum may be raised upon motion of a party, the court's own motion, or request of another court." (Fam. Code, § 3427, subd. (a).)  Before deciding whether it is an inconvenient forum, the court "shall consider whether it is appropriate for a court of another state to exercise jurisdiction" and "shall allow the parties to submit information and shall consider all relevant factors, including:  [¶]  (1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child.  [¶]  (2) The length of time the child has resided outside this state.  [¶]  (3) The distance between the court in this state and the court in the state that would assume jurisdiction.  [¶]  (4) The degree of financial hardship to the parties in litigating in one forum over the other.  [¶]  (5) Any agreement of the parties as to which state should assume jurisdiction.  [¶] (6) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child.  [¶]  (7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to

13

Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA; Fam. Code, § 3400 et seq.). We agree.

The family court's decision to grant Ryan's move-away request did not by itself justify ceding jurisdiction to the Delaware courts. A "change in the child's home state after a court has initially assumed jurisdiction does not result in the shifting of jurisdiction to the new home state." (*In re Marriage of Nurie* (2009) 176 Cal.App.4th 478, 504.) As long as a parent remains in California and exercises visitation in California, a California court that makes a move-away order retains continuing, exclusive jurisdiction to modify the order. (Fam. Code, § 3422, subd. (a); *Grahm v. Superior Court* (2005) 132 Cal.App.4th 1193, 1200 (*Grahm*).) The court may decline, on its own motion, to exercise that jurisdiction if it determines it is an inconvenient forum and another state is a more appropriate forum. (Fam. Code, § 3427, subd. (a).) But before the court does so, it "*shall* allow the parties to submit information and *shall* consider all relevant factors." (*Id.*, § 3427, subd. (b), italics added.) The family court in this case did not comply with these statutory requirements. It abruptly ceded jurisdiction to the Delaware courts at the end of the hearing on Ryan's move-away request without having considered evidence or argument from either party and over Layken's objection. "Under the circumstances, the court should have provided the parties with an opportunity to submit evidence relevant to the court's determination of whether California was a convenient forum or [Delaware] was an appropriate forum. This was not done, and therefore, the order [ceding jurisdiction] was in error." (*Brewer v. Carter* (2013) 218 Cal.App.4th 1312, 1319 (*Brewer*).)

---

present the evidence. [¶] (8) The familiarity of the court of each state with the facts and issues in the pending litigation." (*Id.*, § 3427, subd. (b).)

Ryan urges us to imply findings necessary to affirm the portion of the order ceding jurisdiction. We may not do so. "Under the doctrine of 'implied findings,' if the record is silent, we must presume the trial court fully discharged its duty to consider all of the relevant statutory factors and made all of the factual findings necessary to support its decision for which there is substantial evidence. [Citations.] Where the record reflects what the court actually did, however, these presumptions do not apply." (*Brewer*, *supra*, 218 Cal.App.4th at p. 1320.) The record here shows the family court did not give the parties an opportunity to present evidence or argument on the inconvenient forum issue and did not consider all relevant statutory factors. "Without the parties having had an opportunity to submit evidence on the inconvenient forum issue and lacking any evidence in the record that California is an inconvenient forum or [Delaware] is a more convenient forum to resolve the parties' custody issues, we decline to presume the [family] court made the factual findings necessary under [Family Code] section 3427." (*Brewer*, at p. 1320.)

Ryan also contends any error in failing to comply with Family Code section 3427 before ceding jurisdiction to the Delaware courts was harmless because the court would have made the same decision had it complied. We are not persuaded. Failure to comply with UCCJEA procedural requirements is generally subject to harmless error analysis, which requires the appellant show a more favorable result was reasonably likely had there been compliance. (*In re A.C.* (2017) 13 Cal.App.5th 661, 673; *In re R.L.* (2016) 4 Cal.App.5th 125, 143; *In re Cristian I.* (2014) 224 Cal.App.4th 1088, 1098-1099.) "This general rule, however, is inapplicable where, as here, the trial court has acted in excess of its jurisdiction." (*In re Marriage of Kent* (2019) 35 Cal.App.5th 487, 496 (*Kent*).) As noted earlier, the family court retained

15

continuing, exclusive jurisdiction over the child's custody when it issued the move-away order, because Layken continued to reside in California and had the right to visitation in California. (Fam. Code, § 3422, subd. (a); *Grahm, supra*, 132 Cal.App.4th at p. 1200.) The court could not simply cede that jurisdiction to the Delaware courts, and thereby effectively dismiss the underlying custody proceeding, on the ground Delaware would be a more convenient forum going forward. Rather, the UCCJEA provides that when a California court determines another state is a more appropriate forum after hearing from the parties, the court "shall stay the proceedings upon condition that a child custody proceeding be promptly commenced in another designated state and may impose any other condition the court considers just and proper." (Fam. Code, § 3427, subd. (c).) To dismiss an action when a statute requires the court stay the action exceeds the court's jurisdiction. (*Sindler v. Brennan* (2003) 105 Cal.App.4th 1350, 1353; *Blake v. Ecker* (2001) 93 Cal.App.4th 728, 737-738.) Because the cession of jurisdiction "was an act in excess of the [family] court's jurisdiction—i.e., not merely a procedural error, but a violation of a clear restriction or limitation on the court's power to act [citation]—[that portion of the order] may be reversed without a showing by [Layken] that she was prejudiced by this error." (*Kent*, at p. 496, fn. omitted; see Code Civ. Proc., § 43 [appellate court may modify appealed judgment or order]; *Feresi v. The Livery, LLC* (2014) 232 Cal.App.4th 419, 428 [erroneous portion of judgment stricken and judgment affirmed as modified].)

## III.

## DISPOSITION

The move-away order is modified by striking the portion of the order ceding jurisdiction to the courts of Delaware and, as so modified, is affirmed.

16

Said affirmance is without prejudice to a motion by either party or by the court, in compliance with Family Code section 3427, to determine whether California is an inconvenient forum and another state is a more appropriate forum to hear and determine future custody disputes.  The stay previously issued by this court is dissolved.  The parties shall bear their own costs on appeal.

IRION, J.

WE CONCUR:

McCONNELL, P. J.

AARON, J.

17